146 So.2d 828 (1962)
Willie O. CLAUSE, Plaintiff and Appellee,
v.
Consuelo BROUSSARD and Grover Rees, Defendants and Appellants.
No. 675.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1962.
Rehearing Denied December 10, 1962.
*829 Willis & Willis, By Earl H. Willis, St. Martinville, for defendant-appellant.
Domengeaux & Wright, By Bob F. Wright, Lafayette, for appellee.
Before TATE, SAVOY and HOOD, Judges.
HOOD, Judge.
Plaintiff, Willie O. Clause, seeks a judgment against defendants, Consuelo Broussard and Grover Rees, decreeing plaintiff to be the owner of a servitude of passage over a strip of land in the Town of Breaux Bridge, ordering defendants to remove a fence which they had constructed on that property, ordering them to desist from otherwise obstructing plaintiff's use of the servitude, and condemning defendants to pay damages for alleged trespasses on the land affected by that servitude. After trial of the case on its merits, judgment was rendered in favor of plaintiff, granting him all of the relief which he sought, except that his demand for damages was rejected. Defendants have appealed from that judgment, and plaintiff has answered the appeal praying that the judgment be amended to award a portion of the damages originally sought by him, and further demanding that this Court condemn defendants to pay an additional sum as damages for taking a frivolous appeal.
The evidence establishes that by deed dated February 14, 1959, plaintiff purchased from the defendants the fee title to an irregular shaped lot or parcel of land located in the Town of Breaux Bridge, having a frontage of 70 feet on Bridge Street and a depth of 185.9 feet along the southwestern line of said lot. This deed also contains the following provision:
"In addition to the foregoing, and for the same consideration hereinafter mentioned, the vendors sell, transfer and deliver to the vendees, as aforesaid, a servitude of passage, in perpetuity to the extent which may be necessary for access to or exit from the hereinabove described property, over and across that parcel of ground having a frontage of forty (40) feet along Bridge Street and extending along the southwestern line of and for the entire depth of said hereinabove described property, as is fully shown on that plat of survey by Colomb and Laurent, Surveyors and Engineer, dated February 9, 1959, attached hereto and made part hereof."
The plat of survey which is attached to this deed shows the exact dimensions and *830 location of the lot or parcel of land which was conveyed in fee to plaintiff, and it also shows the dimensions and location of the 40-foot strip of land which is affected by the servitude. This strip of land is shown on the plat as lying adjacent to the post office property and as having a frontage of 40 feet on Bridge Street and a depth of 185.9 feet, extending back the entire depth of the southwestern line of the lot which was conveyed in fee.
Immediately prior to the execution of the deed, the plaintiff had entered into a contract with the United States Government, under the terms of which plaintiff agreed to construct a post office building on the above mentioned lot of ground and to lease that structure to the Government for a specified number of years. The Government had previously obtained an option to buy this particular tract of land and the above described servitude of passage from the defendants, and it had assigned that option to plaintiff at or about the time the contract to build the post office building was entered into. Plaintiff was exercising his rights under this option in buying the lot and servitude from defendants.
On the day this act of sale was executed, a question apparently arose between plaintiff and defendants relating to this servitude, and to settle this question the parties entered into another written agreement, which we will refer to as a supplemental agreement, which bears the same date as does the deed. This supplemental agreement contains the following provisions:
"* * * some question has arisen as to the manner of preparation by `FIRST PARTY' (plaintiff Clause) of the said forty (40) feet parcel of ground for utilization thereof as a means of access to or exit from the lot or parcel of ground conveyed as aforesaid, and it is the desire of `FIRST PARTY' and `SECOND PARTY' (defendants Broussard and Rees) to agree with references thereto and thereby set at rest all questions with reference thereto.
"NOW, THEREFORE, it is herein mutually agreed by and between `FIRST PARTY' and `SECOND PARTY,' in and for the same consideration recited in the aforesaid instrument of cash sale and without which same would not have been executed, that, in the preparation by `FIRST PARTY' of the said forty (40) feet parcel of ground for utilization thereof, under the aforedescribed servitude of passage, as a means of access to or exit from the lot or parcel of ground conveyed as aforesaid, the level of the said forty (40) feet parcel of ground will not be lowered except for such grading of its northwestern thirty (30) feet as may be required to allow the passage of vehicles to and from Bridge Street." (Minor typographical errors corrected).
Within a week after this sale was completed, plaintiff began the construction of the post office building pursuant to his agreement with the Government. During this construction the entire 40-foot strip of land affected by the servitude of passage was cleared, graded for a road and partially graveled or shelled, and it was used during a part of the construction for passage and to store supplies and materials for the building project. Defendant Rees on several occasions during that construction ordered plaintiff's employees off that strip of land and otherwise interfered with plaintiff's use of it, and because of this interference, plaintiff instituted an injunction suit against defendant before the building was completed, but that suit was later dismissed by the court. The new building was completed and the post office personnel moved into it on October 22, 1959. On the same day, defendant Rees constructed a fence which enclosed all of the property included in this servitude, except the front 30 feet of it. The only part of the servitude property which remained unenclosed by the fence and thus accessible to plaintiff or his lessee, therefore, was the area fronting 40 feet on Bridge Street by a *831 depth of 30 feet. Plaintiff promptly demanded that this fence be removed, but defendants have refused to do so.
It is apparent from the foregoing that this action involves an interpretation of the provisions contained in the two documents entered into between plaintiff and defendants, both dated February 14, 1959, relating to this servitude of passage. The specific question presented is whether plaintiff's lessee, the Post Office Department, has the right to use the entire strip of land, having a frontage of 40 feet on Bridge Street by a depth of 185.9 feet, for access to and exit from the post office property. Plaintiff contends that it does have that right, while defendants contend that plaintiff or his lessee can use only that portion of the 40-foot strip "which may be necessary" for that purpose, and that it is only "necessary" for the Post Office Department to use the front 30 feet for such passage.
Plaintiff offered parol evidence tending to show the intent of the parties in executing the deed and the supplemental agreement. Defendants objected strenuously to this evidence, contending that there is no ambiguity in the two documents, that extrinsic evidence accordingly is not admissible, and that the issues presented here should be determined from the provisions of the documents alone. The trial judge admitted the extrinsic evidence "subject to the objection." Defendants maintain in this Court that there is no ambiguity in the documents and that extrinsic evidence is inadmissible, but they contend, in the alternative, that if there is some ambiguity or doubt as to the intent of the parties, then under the provisions of LSA-C.C. Article 753 the interpretation must be favorable to the defendants, as the owners of the property affected. Further, in the alternative, defendants contend that the parol evidence which was presented supports their position in this suit. Although defendants maintain that parol evidence to show the intent of the parties is not admissible here, they contend that under their construction of the contracts plaintiff has the burden of proof to establish how much of the 40-foot strip is necessary for passage, and they concede that parol evidence may be introduced at least for that purpose.
The trial judge, in holding that plaintiff has the right to use the entire tract for access to and exit from the post office property, said:
"The two instruments are clear and explicit that the parties intended and did convey and acquire a right of way 40 ft. front by a depth of 185.9 ft., or the full depth of the tract, for use of the post office and the people who had dealings with it. That is the meaning of the two instruments, clearly and explicitly stated."
The law provides that the right of passage, or right of way, is a servitude, and that "when it is the result of a contract, its extent and the mode of using it is regulated by the contract." LSA-C.C. Art. 722. With reference to the rules to be applied in interpreting contracts, the Civil Code provides that, "When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory." LSA-C.C. Art. 1951. Also, in connection with the interpretation of instruments relating to servitudes, Article 753 of the LSA-Civil Code provides that:
"Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected."
The dispute actually centers around the meaning of the words, "to the extent which may be necessary," as those words are used in describing the servitude. Defendants contend that this limits the right of passage to only that portion of the area of the 40-foot strip which may be necessary to provide access to and exit from the post office property. Plaintiff, on the other *832 hand, contends that by these words the parties merely meant to restrict the grantee as to the manner in which the servitude was to be used, and that it was not intended to reduce or restrict the size of it.
We are unable to agree with defendants in their interpretation of the deed and the supplemental agreement. If we should accept their argument and hold that the grantee of the servitude cannot use any more of the surface of the land therein described than is necessary for access to or exit from the post office property, then such a holding would render nugatory that part of the description which sets out the exact dimensions and boundaries of the servitude. There would have been no reason for setting out any boundaries at all. If the parties had intended that the dimensions shown in the deed were included merely to delineate the maximum area which could be used, that is, that the amount of land used for access to or exit from the post office property could not exceed or extend beyond the boundaries set out in the deed, then we think language to that effect would have been used. The words, "to the extent which may be necessary," does not convey any such meaning to us. The interpretation placed on these documents by plaintiff, on the other hand, that this phrase relates only to the manner in which the servitude may be used, does give effect and meaning to all provisions of the deed and the description.
Defendants' argument that the grantee of the servitude is entitled to use only the front 30 feet of the property affected by it is inconsistent, we think, with the phrase, "for the entire depth of said hereinabove described property," which phrase was used in the deed as a part of the description of this servitude. Also, defendants' argument that the area which can be used for passage may increase or diminish from time to time, depending upon the extent to which such use may be or may become necessary, is not consistent with the provisions in the deed that the servitude is granted "in perpetuity." Since plaintiff was granted the servitude of passage over the 40-foot strip, to its entire depth of 185.9 feet, "in perpetuity," we think the parties intended that he, or his heirs or assigns, would continue to have the rights therein granted until such rights are lost or are terminated in some lawful manner.
Article 1949 of the LSA-Civil Code provides that doubts in one contract may be resolved by reference to "other contracts or agreements made on the same subject between the same parties, before or after the agreement in question." Defendants contend that the effect of the supplemental agreement which was entered into by the parties following the execution of the deed is to diminish the size of the right of way to the front 30 feet of the property. We do not interpret that agreement as having any effect at all upon the size of the servitude. We think it merely specifies what portion of the 40-foot strip of land may be lowered and graded, but it does not restrict plaintiff to the use of the front 30 feet for passage. Its purpose, as stated in the agreement itself, is to settle and to agree upon "the manner of preparation * * *" of the 40-foot parcel of ground. Further, the agreement provides that "in the preparation" of such parcel of ground, "the level of the said forty (40) feet parcel will not be lowered except for such grading of its northwestern thirty (30) feet as may be required to allow the passage of vehicles to and from Bridge Street." This, in our opinion, clearly does not show an intent to reduce the area which plaintiff may use for passage. His right to use the entire 40-foot strip, in fact, would not have been restricted or limited, even if the parties had omitted the exception contained in the last part of the above quoted provision and, by using substantially the same language, had agreed that not any part of the land affected by the servitude could be lowered or graded. Not only does it seem to us that the supplemental agreement refers to the manner in which the 40-foot strip of land was to be prepared for use, but we think it *833 clearly implies that the parties at that time intended that plaintiff was to have the use of the entire area covered by the servitude.
We conclude, therefore, that according to the provisions of the deed and the supplemental agreement, and without considering any extrinsic evidence, plaintiff acquired a servitude or right of passage over the entire 40-foot strip, that he, or his heirs or assigns, have the right to use all of that strip of land, to its full depth of 185.9 feet, for access to and exit from the post office property, and that the phrase "to the extent which may be necessary," as used in the description of this servitude, relates to the manner in which it is to be used rather than to the area which may be affected by this right.
The general rule is that if an instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in construction. Esso Standard Oil Company v. Texas & New Orleans Railroad Company, La.App. 3 Cir., 127 So. 2d 551. Since we have concluded that the deed, on its face, shows that the parties intended that a servitude of passage over the entire 40-foot strip was to be conveyed, it is not necessary for us to consider the extrinsic evidence which was introduced tending to show the intent of the parties or to establish how much of the 40-foot strip is actually needed by plaintiff's lessee for passage.
We think it is appropriate to state, however, that the extrinsic evidence which was introduced supports plaintiff's position in this case. If that evidence should be considered, we think it shows that the parties in executing these documents did not intend that the size of the servitude was to be limited, depending upon the necessity, and that the portion of the 40-foot strip which remains unenclosed by defendants' fence is not adequate for access to and exit from the post office property.
Defendants' action in erecting the fence around the major portion of the property affected by this servitude has deprived plaintiff, or his lessee, from using some of the rights which were acquired from defendants, and there is no question that defendants' unwarranted interference with plaintiff's enjoyment of these rights has caused the latter some annoyance and inconvenience. In our opinion, the trial court erred in failing to award plaintiff damages for this interference. We think an award of $350.00 as damages would be fair and adequate under the facts presented here. See LaFleur v. Sylvester, La.App. 3 Cir., 135 So.2d 91.
Although we have found no merit to the position taken by defendants in this case, serious legal issues are presented, and we do not consider the appeal to be frivolous. Plaintiff's demand for damages for taking a frivolous appeal, therefore, must be denied.
For the reasons herein set out, the judgment of the District Court is amended by adding to that judgment the following decree: It is further ORDERED, ADJUDGED and DECREED that defendants, Consuelo Broussard and Grover Rees, be and they are hereby condemned to pay unto plaintiff, Willie O. Clause, the sum of $350.00, with legal interest thereon from date of judicial demand until paid.
The judgment of the District Court, as herein supplemented or amended, is hereby affirmed. All costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.