McBRIDE, Judge.
This is a petitory action brought by the lessee and assignee of certain mineral leases granted by the alleged heirs of John A. Griswold unto plaintiff and his brother, Gary A. Bolding. See LSA-C.C.P. arts. 3651, 3652, 3653 and 3664. It is undisputed that Gary A. Bolding, the named lessee in certain of the leases, was simply a nominal party. Plaintiff is the lessee.
The land affected by the mineral leases is situated in the Parish of Jefferson and a part of Sections 9, 10, and 11, Township 14 South, Range 23 East..
Impleaded as defendants are Mrs. Agatha Fischer (or Fisher) Mayronne, widow of George J. Mayronne, Sr., her four children and their respective spouses, and Eason Oil 'Company, which is developing the property under mineral leases granted it by the Mayronnes; plaintiff alleges the defendants are in possession and that the Mayronnes are claiming title.
Plaintiff avers that by act before James Fahey, notary public for the Parish of Orleans, dated April 29, 1872, registered Book “M” Folio 354, et seq., Parish of Jefferson, the land involved, together with other lands, was deeded to John A. Gris-wold by Amos B. Merrill; that there has been no divesture of Griswold’s title and ownership of the property is now vested in his heirs. The pertinent part of Fahey’s act reads as follows:
“Personally came and appeared: Amos B. Merrill, of the City of Boston, County of Suffolk, State of Massachusetts,
“Who declared, that for the consideration and on the terms and conditions hereinafter set forth and expressed; he does, by these presents, grant, bargain and sell, convey, assign, transfer, setover and deliver, with no personal warranty, on his part, but with substitution and subrogation to all his rights and actions in warranty against all preceding vendors or possessors — Unto—
“John A. Griswold, of the City of New York, County of New York, State of New York, herein represented by John J. Williamson, of this City, his duly authorized agent, the said Williamson being here present, accepting and purchasing for said John A. Griswold, his heirs & assigns and acknowledging possession of
*(* »i» «J»
(Description of property omitted.)
******
“To have and to hold the said property unto the said purchaser his heirs and assigns to their only proper use and behoof forever.
* # * * * * (The act recites there were certain enumerated encumbrances bearing against the property as shown by the mortgage certificate. These are omitted here.)
‡ ‡ ifc ‡ ‡
“The said John J. Williamson binds his said Constituent, as a further and additional consideration of this sale, to pay all and singular the incumbrances now resting on said premises and herein above described, as well as all or any taxes, charges or other incum-brances that are due or may rest thereon, without any exception or reservation whatsoever, and releases and discharges the present vendor of the *886 payments of the same or any part thereof, and promises to hold him harmless in the premises. The said John J. Williamson, in his aforesaid quality, does hereby dispense with the production of the tax receipts required by law, and releases me, notary, from all responsibility in the premises.
“This sale and transfer is made and accepted for and in consideration of the sum of Fifty-two-thousand-one hundred and ninety-eight ($52,198.00) Dollars, in addition to and over and above the incumbrances and taxes assumed by the purchaser as hereinbe-fore stated, which the said purchaser hereby declares and acknowledges to have received to his satisfaction and for which he grants full acquittance and discharge.” (Italics ours.)
Defendants maintain that title stood in Amos B. Merrill, who was holding the property for the account of the New Orleans, Mobile and Texas Rail Road Company and that Merrill’s transfer to Griswold was merely for the convenience and benefit of said railroad which continued to be the owner after the transaction. The property was never formally retroceded by Gris-wold.
Mrs. Mayronne and her four children acquired their title from the succession of George J. Mayronne, Sr., who had purchased from Horace Newman, who in turn traces his title back to a sale by the New Orleans, Mobile and Texas Rail Road Company to one Oliver Ames in the year 1874.
Defendants offered and introduced in evidence, the same being received by the trial court over objections by plaintiff, a copy of the minutes of the meeting of the board of directors of New Orleans, Mobile and Texas Rail Road Company on February 21, 1872, the pertinent portions of which read as follows:
“New York, February 21st, 1872
“Pursuant to call a special meeting of the Board of Directors of the New Orleans, Mobile and Texas Rail Road Company was held this day at this office of the Company at which there was present: Edwin D. Morgan, Oates Howes, George Bliss, John L. Macaulay, Louis A. Von Hoffmann, Harrison Decker, John A. Griswold, George G. Hailes, and Joseph Seligman.
“The meeting was organized at 3:30 P.M. with John A. Griswold, President, in the chair.
***** *
“A communication from Amos B. Merrill was presented asking the adoption of the following resolutions.
“The resolutions were read and on motion duly seconded, were adopted.
“Resolved:
“That Amos B. Merrill of Boston, Mass., now in the State of Louisiana, be authorized and directed to convey to the Hon. John A. Griswold, of Troy, N. Y., President, in his individual name and capacity, all the lands in Louisiana, with their improvements and appurtenance, which belong to this corporation and stand on the record in the individual name of said Merrill, that is to say, all the lands and property described and conveyed by the following deeds and acts, viz:
* * * * * *
(Copy of descriptions of property omitted herefrom.)
******
“That the consideration for said conveyance, to be inserted therein, as-required by the laws of Louisiana, by the aggregate amount of the original purchase price without interest or other costs added; and that said Merrill be-authorized and directed to receipt for and acknowledge payment and satisfaction of the said consideration money to-the said Griswold, without the payment to him, said Merrill, of any part whatsoever thereof, except so far as relates *887 ■to mortgages or incumbrances assumed by said Griswold; this corporation looking to said Griswold solely therefor •and for said lands, which he takes in fact only for this corporation; and this ■corporation hereby releases, and acquits said Merrill from any claim on him for the amount of said consideration ■money, so to be receipted for by him, and from all accountability therefor. “Resolved:
“That Mr. A. C. Hutchinson of New Orleans be authorized on behalf of this corporation to adjust and settle all accounts and demands between this corporation and said Merrill, and on behalf of the corporation to execute to him all releases, discharges and acquit-tances required for the protection of said Merrill or that may be necessary ■or proper in the premises.
“Resolved:
“That the business above referred to in the foregoing last three resolutions be conducted under the advice of Hon. John A. Campbell, counsel for this ■corporation in New Orleans.
******
Signed: ífJno. J. Howell,
“Secretary”
A copy of the minutes of the meeting held March 11, 1872, at which John A. Griswold •also presided as president, reflects that the February 21, 1872 minutes were read and approved by the directors.
After a trial below on the merits, judgment was rendered in favor of defendants ■dismissing plaintiff’s suit at his costs. The trial judge wrote comprehensive reasons for judgment, which in part state:
“Defendants’ chain of title originates from a sale by the New Orleans-Mobile & Texas Railroad Company. Defendants contend that the sale by Merrill to Griswold in 1872, was, in fact, a ■sale to the railroad. They rely on two •(2) resolutions of the Board of Directors of the New Orleans-Mobile & Texas Railroad Company. The first resolution is under date of February 21, 1872, and the second on March 11, 1872.
“The evidence reveals that plaintiff is a 19S1 law graduate of Tulane University. He was employed by Humble Oil Company as a title man from August 1,1951 to December 1,1953. Since that time, he has done title work for various oil companies, has leased land, is familiar with abstracts of title, and particularly Louisiana abstracts, generally deals in oil leases, and presently owns producing leases. In the summer of 1960, he negotiated with Mrs. May-ronne for a lease of the land at issue. Mrs. Mayronne and her children are the record title owners. These negotiations were conducted after the discovery of oil by Eason Oil Company in that area in 1960. After his negotiations with Mrs. Mayronne terminated unsuccessfully and she leased the land to the defendant, Eason Oil Company, plaintiff contacted the Griswold heirs and secured the leases which are the basis of this action.
“During plaintiff’s negotiations with Mrs. Mayronne, he had done some preliminary title work and was aware of the Act of Sale from Merrill to Gris-wold on April 29, 1872, which, of course, was his reason for contacting the Griswold heirs.
“Although there were other lands involved, plaintiff testified that he and his attorney selected the particular parcel of land here at issue because his investigation revealed that acquisitive prescription had not run on this land.
“John A. Griswold died October 31, 1872 and, by various exhibits, records, etc., plaintiff has tendered proof that the lessors, through which he holds, are the present heirs of said John A. Gris-wold.
*888 “Defendants correctly contend that under LSA-CCP 3653, plaintiff must make out his title, since defendants are in possession, and plaintiff may not rely on any weakness in defendants’ title. Further, that John A. Griswold never owned the property in dispute, it having been purchased in the name of Gris-wold but actually for the account of the New Orleans-Mobile & Texas Railroad Company, of which Griswold was the President. They further urge various acquisitive prescriptions.
“John A. Griswold was the President of the railroad and, according to the resolutions, presided at the Board meeting of February 21, 1872, which authorized title to be placed in Griswold’s name for the railroad, and also presided at the meeting of March 11, 1872, at which the minutes of the February meeting were ratified. Objection is made by plaintiff to said resolutions on various grounds, including lack of proper identification and certification. The Court is satisfied that the L & N Railroad Company is the successor corporation of the New Orleans-Mobile & Texas Railroad Company, and admitted said resolutions certified by the Secretary of said Company.
“The Act of Sale by Merrill to Gris-wold on April 29, 1872 contains five (5) declarations or items, which are subject to explanation or interpretation. These are as follows: 1) John J. Williamson appeared as purchaser on behalf of John A. Griswold without authority in writing and without declaring to the Notary that he was acting under written authorization of John A. Griswold; ,2) Williamson bound Griswold to pay certain encumbrances on the property and to hold the vendor harmless in the premises, also without written authorization; 3) Williamson dispensed with production of tax certificate ‘in his aforesaid quality’ (as agent for Griswold) and relieved the notary of responsibility, also without written authority; 4) The recited consideration for the sale was the sum of $52,198.00,. together with assumption of indebtedness existing on the property. The act does not recite that the consideration was paid by the purchaser to the vendor, but, on the contrary, acknowledges that the purchaser received it and granted full acquittance and discharge to the vendor; 5) The sale was made without warranty of the vendor.
“These apparent inconsistencies and lack of authority of the agent are explained by the February, 1872 resolution of the railroad company.
“To digress for a moment, in originally considering this case for decision, the Court called upon both plaintiff and defendants to submit additional briefs on the validity of the 1872 act. Defendants contend that the act is not translative of title. Plaintiff contends that since the title of all parties to this suit arises through said act and it is alleged in the chain of title by defendants, that said act must be accepted and may not be questioned. Plaintiff cites numerous authorities in support of this proposition.
“But defendants’ title does not necessarily derive from Griswold. Plaintiff’s title, if any, is directly from Griswold. But defendants, even though alleging Griswold took title in his name for the railroad, have introduced evidence of the railroad resolution, which, if binding on Griswold and those claiming through him, as between the parties tO' this suit, reveals that the railroad had title prior to the sale to Griswold, and the sale only substituted Griswold for Merrill as holding the property for the railroad. No objection was made to the February, 1872 resolution as revealing a prior title in the railroad. Defendants may attack the sale by Merrill to Griswold, but it is not necessary in deciding this case to hold that act invalid, *889 although defendants may urge its invalidity.
“Plaintiff further objects to the introduction of the resolutions as being prohibited by LSA-R.S. 9:2721-2724. Consideration of this objection and the determination of the validity thereof rests in part on the question of whether or not plaintiff Bolding is a third party.
“Bolding testified he was aware of the sale from Merrill to Griswold on April 29, 1872 when he contacted the Griswold heirs and was probably aware of it when he attempted to secure a lease from Mrs. Mayronne. The act of sale was not legal on its face, and, certainly, it contains some unusual declarations. Also, on its face, the agent who appeared on behalf of Gris-wold did not have legal authority to do so, either to accept the sale on behalf of Griswold or to obligate Griswold to do anything. The five items enumerated above are self-apparent.
“Plaintiff also knew that Mrs. May-ronne had record title to the property and a chain of title originating with the railroad. Knowing there was a record title holder, who did not acquire through Griswold, and knowing the defects on the face of the act by which Griswold acquired, plaintiff cannot, in any sense, be considered an innocent third person or unaware of possible title defects. He traded on a title defect when he located the Griswold heirs and approached them to secure the leases, which are the basis of his suit. Not only did he intend to acquire the leases, but he also intended to acquire the right to bring a suit as mineral lessee. With the knowledge which he had and the knowledge which was apparent on the face of the records, plaintiff cannot contend that he is in any better position than John A. Griswold would be if Griswold were before the Court, or Griswold’s heirs, who stand in Griswold’s shoes and through whom plaintiff claims.
“It is not necessary to attack the validity of the 1872 Act of Sale. Gris-wold did not personally appear and sign the act, although' title was taken in his name. The act, on its face, is not translative of title because no consideration was paid to the vendor. The resolution is admissible in evidence against Griswold as a participant without objection to the Railroad’s claim of title to the land, both before and after the sale to Griswold, and as a declaration against interest at a time unsuspicious. It is also admissible to explain apparent inconsistent, obscure and unusual provisions in the Act itself, particularly with reference to the consideration which was not recited to have been paid to the vendor but, on the contrary, was receipted for by the purchaser. As between Griswold, President of the Railroad, and the Railroad, the resolutions are not self-serving as to the Railroad. They are declarations and acts against interest by Griswold.
“The railroad company was a quasi-public corporation, which, of itself, gives additional status to its corporate minutes. Griswold was the President and presided at both meetings. The resolution further shows, though Merrill is not a party to this suit, that insofar as the corporation and Griswold were concerned, Merrill requested the adoption of the resolution which authorized him to ‘ * * * convey to Gris-wold all the lands in Louisiana. * * * which belong to this corporation * *.’ ‘ * * * which he (Griswold) takes in fact only for this corporation.’ That the consideration for the sale was the original purchase price paid by Merrill for the land conveyed, and Merrill was released from any claim against him for the money which he expended to purchase the property. The resolu *890 tion further acquitted and discharged Merrill from monetary claims in connection with the transaction. The above resolution fully explains the following statement of consideration in the act:
“ ‘This sale and transfer is made and accepted for and in consideration of the sum of Fifty Two Thousand One Hundred Ninety-eight ($52,198.00) Dollars in addition and over and above the incumbrances and taxes assumed by the purchaser as here-inbefore stated which the said purchaser hereby delcares and acknowledges to have received to his satisfaction and for which he grants full acquittance and discharge.’
“The resolution provided ‘and this corporation hereby releases, and acquits said Merrill from any claim on him for the amount of said consideration money so to be receipted for by him, and for all accountability therefor.’ The resolution further stated ‘that Mr. A. C. Hutchinson of New Orleans be authorized on behalf of this corporation to adjust and settle all accounts and demands between this corporation and said Merrill, and on behalf of this corporation to execute to him all releases, discharges and acquittances required for the protection of said Merrill or that may be necessary or proper in the premises.’
“If the resolution had been annexed to the Act of Sale and if A. C. Hutchinson had appeared on behalf of Gris-wold, there would be no question but that this resolution was the authority of the agent, and any question of the title of the railroad, or right to grant such authority, would be between Merrill and said agent. Since there is no dispute as to the authority of the agent, according to plaintiff’s version of the case, the resolution explains the consideration and operates as a bar to any action by John A. Griswold, his heirs, and plaintiff to question the defendants’ title or to assert title in John A. Griswold. It might be added that, although Merrill or his heirs are not parties to this litigation, he complied with the resolution which stated that the corporation owned the land conveyed while it was in Merrill’s name.
“Clearly, Griswold could not maintain-this suit. He presided at the meeting of the Board of Directors in February,. 1872, and again on March 11, 1872, when the minutes of said meeting were read and approved. After Griswold’s death, his succession was opened in-Louisiana, and no claim or demand was ever made for this property. There is no evidence whatsoever in the record that, from the date of the sale by Merrill to Griswold, on April 29, 1872, until the institution of this suit, any claim, demand, exercise of ownership or other right to this property or any other property, including the 1872 act, were exercised by or on behalf of Griswold or his heirs. On the contrary, the evidence shows that his heirs had absolutely no knowledge of this transaction until approached by plaintiff in-this suit. And the evidence reveals that, as between these parties, the Railroad, not Griswold, was the owner of the property in dispute in 1872.
“In view of the above, it is unnecessary to review the prescriptive issues presented.”
Plaintiff has perfected this appeal.
We agree there was no consideration for the sale between Merrill and Gris-wold. The act itself, as well as the minutes of February 21, 1872, so reflect. The act makes the most unusual statement that the vendor acknowledged to have received the consideration from the purchaser and his honor below endeavored to explain the meaning of this. But be that as it may, whatever was the meaning, the act is *891 patently not translative of title and, therefore, is of no effect.
LSA-C.C. art. 1893 provides that an obligation without a “cause” can. have no •effect The “cause” of a contract is meant the consideration or motive for making it. LSA-C.C. art. 1896.
LSA-C.C. art. 2439 provides:
“The contract of sale is an agreement by which one gives a thing for a price in current money, and the other :gives the price in order to have the ■thing itself.
“Three circumstances concur to the ■perfection of the contract, to wit: the thing sold, the price and the consent.”
The price of the sale must be certain, that is to say, fixed and determined by the parties. LSA-C.C. art. 2464.
If the assumption of the mortgage indebtedness constituted consideration ■sufficient to support the sale, still a holding that there was no consideration would be the proper one. Williamson had no mandate to assume the mortgage obligations for Griswold. Under LSA-C.C. art. 2278, written evidence is necessary to prove any acknowledgment or promise to pay the debt of a third person, and as a corollary, Williamson could not bind Griswold to pay Merrill’s debt in the absence of written authority.
There is no evidence of the existence of a mandate to Williamson. Nor does the act reflect there was any, merely renting that Merrill sells to Griswold “herein represented by John J. Williamson.” Who Williamson was or how or why he represented Griswold does not appear. Under LSA-C.C. art. 2997 the power to buy or sell must be expressed and special, and according to well established jurisprudence, a mandate to contract to buy or sell real •estate must, like the contract itself, be in writing. Turner v. Snype, 162 La. 117, 110 So. 109, and the numerous cases therein cited.
 Of course, contracts made in the name of another, without authority, may be valid, if ratified by the principal. LSA-C.C. art. 1840. The contract was never ratified by Griswold during his lifetime. Even if the granting of mineral leases by the heirs of the purchaser may be considered a ratification of a transaction which took place ninety years before, the same would avail them nothing as title was placed in Griswold’s name not for his individual benefit but for the account of his corporation.
The record makes it certain that Merrill, whose role was that of trustee of the New Orleans, Mobile and Texas Rail Road Company, desired to transfer the property to Griswold, president, for the account of the corporation without consideration, and the resolution was adopted by the directors February 21, 1872, and subsequently approved at the meeting of March 11, 1872. These minutes would be competent and prima facie evidence of the recitals therein which bind Griswold, who was president-director of the corporation and presided at and participated in both meetings. The copies of the minutes thereof, certified by F. D. Burke, secretary of the Louisville and Nashville Railroad Company under the seal of the corporation, are admissible in evidence to the same extent as the originals would be. They were properly received and considered by the trial judge.
LSA-R.S. 45:322 reads as follows:
“Copies of all books and records kept by the several railroad companies in Louisiana, including extracts from the stock books and minutes of the proceedings of the directors, certified by the secretaries of said companies, under the seal of the company, shall be received in all the courts of Louisiana as evidence in place of the originals.”
*892 The reason why the copies bear the certification of the secretary of the Louisville and Nashville Railroad Company should be explained. The New Orleans, Mobile and Texas Rail Road Company was formerly known as New Orleans, Mobile and Chattanooga Railroad Company, which was incorporated by an act of the General Assembly of Alabama in 1866; the corporation was recognized and authorized to do certain acts in Louisiana by Act No. 31 of 1870. The corporate name was changed to New Orleans, Mobile and Texas Rail Road Company by act of the General Assembly of Alabama in 1871; such change was also authorized by the legislature of Louisiana by Act No. 94 of 1871. In 1880, acting pursuant to the laws of Alabama, a committee of bondholders of the corporation formed a new corporation named “New Orleans, Mobile and Texas Rail Road Company, As Reorganized.” Following this incorporation, a transfer of the property of the original New Orleans, Mobile and Texas Rail Road Company was made to it and subsequently the property was conveyed to Louisville and Nashville Railroad Company which had become the owner of all of the stock of New Orleans, Mobile and Texas Rail Road Company, As Reorganized. As a result, Louisville and Nashville Railroad Company came into the possession, control and custody of and acquired the books and records of both New Orleans, Mobile and Texas Rail Road Company corporations.
Under these circumstances, the secretary of the Louisville and Nashville Railroad Company, which is the successor of the two New Orleans, Mobile and Texas Rail Road corporations and which owns, possesses and controls the books and records of the corporations to which it succeeded, is the proper person having authority to certify to the correctness of the copies of the minutes of the directors’ meetings in question. As appears from a stipulation, ttie original books and records are in the vault of Louisville and Nashville Railroad Company at Louisville, Kentucky. Specifically mentioned in the stipulation is “Book 3-B The New Orleans, Mobile & Texas Minute Book, January 1872 to March 1874—New Orleans, Mobile & Texas Railroad,” from which the certified copies in evidence were made.
It is not necessary for Griswold’s signature to appear on the minutes in order that the same have binding effect upon him and his heirs. It is sufficient that he presided at and took part in the meetings and was cognizant of the proceedings. Beyond any shadow of doubt, he was satisfied therewith. This constitutes valid written evidence of the nature of the transaction which could never be repudiated by Griswold.
This is not a case where parol testimony is sought to be admitted to affect title to realty. On the contrary, the nature of the transaction between Merrill and Griswold is sought to be explained by written and not parol evidence. The minutes can serve in this instance to the same extent as would a counter letter had one been executed by Griswold. The minutes, while not constituting a counter letter in the strict sense of the word, being in writing and binding Griswold, would have the same effect. In Duncan v. Duncan, 26 La.Ann. 532, a document reciting “said house stands in my name but I have no interest in the same; it belongs to my said sister Mary Duncan,” was before the court. The court said:
“The defense is, we think, fully made out. The written instrument, in the nature of a counter letter, not denied by the plaintiff nor in any manner impugned by him, is an effectual bar against the plaintiff’s pretensions to ownership of the property.”
In Morgan v. Hathaway, La.App., 77 So.2d 169, an affidavit, standing uncontra-dicted, was sufficient to overcome the presumption of community. In other words, the court considered the affidavit in the nature of a counter letter.
*893 Besides demonstrating an absolute lack of consideration, the minutes irrefutably evidence the fact that John A. Griswold was a director serving as president of New Orleans, Mobile and Texas Rail Road Company at the time the Fahey act was passed.
The probative value of acts and proceedings of a corporation when certified is set forth by the Supreme Court in Interstate Trust & Banking Co. v. Powell Bros. & Sanders Co., 126 La. 22, 52 So. 179, as follows:
“ * * * It is a general rule of evidence that the acts and proceedings of a corporation, authenticated under the corporate seal and certified by the secretary of the company, are admissible, and make prima facie proof of the facts recited. 17 Cyc. 403, 404, note 48.
“This doctrine was also affirmed in the case of [New Orleans] Jackson [& G. N.] R. R. Co. v. Lea, 12 La.Ann. [388] 389.”
That rule also appears in 32 C.J.S. Evidence § 699, p. 960. In footnotes thereunder, supported by authorities, appear these observations:
“Minute book of corporation when identified is competent evidence of recitals therein.”
“Directors’ minute book was admissible against directors with regard to what was done at meetings of board.”
Appellant contends the copies are not admissible because the records from which they were made were not “kept by the several railroad companies in Louisiana.” In other words, it is said that when records are “kept” without the State of Louisiana, admission of copies thereof is not authorized by LSA-R.S. 45:322. We find no validity in the contention. The language of the statutory section that “Copies of all books and records kept by the several railroad companies in Louisiana * * * ” does not mean that only records “kept” in Louisiana may be certified. We think the section applies to all books and records of the several railroads doing business in Louisiana wherever kept. Said statutory provision can be said to be procedural, and procedural laws are to be given a liberal construction with a view to the effective administration of justice. State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601; McIntyre v. Sovereign Camp W. O. W., 172 La. 810, 135 So. 365; Smith v. Lyon Cypress Co., 140 La. 507, 73 So. 312; Boos v. McClendon, 130 La. 813, 58 So. 582.
If the trial court and this court should be in error, and it can be held that there was consideration for the transaction between Merrill and Griswold and that the act was translative of title to the latter individually, then in that event, appellant’s position would not be improved.
Officers and directors are manda-taries of the corporation, Raymond v. Palmer, 35 La.Ann. 276; directors and officials of a corporation stand in a fiduciary relationship to it, Pool v. Pool, La.App., 16 So.2d 132; officers and directors of a corporation are, in a sense, trustees, Palmer v. Chamberlin, 191 F.2d 532, 27 A.L.R.2d 416 (5th Circuit). See also 3 Fletcher Cyclopedia Corporations, Sec. 838, et seq.; Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 85, 63 S.Ct. 454, 87 L.Ed. 626; Jackson v. Ludeling, 88 U.S. (21 Wall.) 616, 22 L.Ed. 492. They are required to discharge the duties of their respective positions in good faith.
If alive, Griswold could not be heard to set up an adverse claim, and his heirs and their assignees find themselves in no better circumstances. ITe, as trustee, was bound to account for and transfer the property to the corporation whenever required to do so.
*894 In Neal v. Daniels, 217 La. 697, 47 So.2d 44, our Supreme Court said:
“ * * * Under Article 3005 of our Civil Code, the agent is bound to restore to his principal whatever he has received by virtue of his procuration even should he have received it unduly. Under the jurisprudence of this court, as announced in Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522, 527, ‘The employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. * * * ”
See also Lagrone v. Brown, 161 La. 784, 109 So. 490; Hobson v. Peake, 44 La.Ann. 383, 10 So. 762; Gervais v. Gervais, 9 Or.App. 69.
In McClendon v. Bradford, 42 La.Ann. 160, 7 So. 78, the Supreme Court also said:
“ * * * But as the agent and attorney, at first, of the heirs of Rosanna Harris, and afterwards of the succession of McClendon, the land firm of R. H. & J. L. Bradford could not acquire any title adverse to the interest of either. The title they obtained to said Rosanna Plarris land claim, and through which they had obtained patent, issued to them as the owners of the same, must inure to the benefit of the parties whom they represented. It was a constructive trust, which they held for the benefit of their principal. Ringo v. Binns, 10 Pet. [269] 270, [35 U.S. [269] 270, 9 L.Ed. 420;] Michoud v. Girod, 4 How. 503 [11 L.Ed. 1076;] Meeker v. York, 13 La.Ann. 18; Downard v. Hadley [116 Ind. 131,] 18 N.E.Rep. 457.”
In Cuggy v. Zeller, 132 La. 222, 61 So. 209, it was said:
“ * * * A cestui qui trust cannot be subject to fraudulent acts without any recourse against the trustee, because the power was not granted in writing. An agent must devote himself to the interest of his principal and act for him with the same care that an ordinary man bestows upon his own affairs. The duty is of such a nature that it is not easily brought within the strict definition of a rule.”
Had Griswold endeavored to take hold of the property, he, under our codal law, would have been termed a possessor in bad faith. LSA-C.C. art. 3452 reads:
“The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.”
From whatever angle this case may be viewed, the answer must be the same. Griswold having acquired no title to the property, he could convey to his heirs no greater rights than he himself had.
To succeed in this petitory action, it was incumbent upon plaintiff to make out his mineral lessors’ title to the land. He has failed, and, therefore, his action must fail.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.