286 So.2d 508 (1973)
John C. BRAY, Plaintiff-Appellee,
v.
Dr. C. E. BOYD et al., Defendants-Appellees-Appellants.
No. 12143.
Court of Appeal of Louisiana, Second Circuit.
October 10, 1973.
Rehearing Denied, November 13, 1973.
Writ Refused January 4, 1974.
Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for Dr. C. E. Boyd, defendant-appellant.
Wilkinson, Carmody & Peatross by Arthur R. Carmody, Jr., and John M. Madison, Jr., Shreveport, for plaintiff-appellee.
John R. Ballard, Shreveport, for Heirs of Eliza S. Harris Watson, defendants-appellees.
Pugh & Nelson by Sydney B. Nelson, Shreveport, for Daniel Michael Kline, defendant-appellee.
Freyer & Freyer by Sam A. Freyer, Shreveport, for Ill. Central Railroad Co., defendant-appellee.
Before AYRES, PRICE, and WILLIAMS, JJ.
Rehearing Denied, En Banc. November 13, 1973.
AYRES, Judge.
This is a petitory action wherein plaintiff asserts his ownership of a described tract of land; in the alternative and in the event plaintiff is found not to be the sole owner of the tract but the owner of only an interest therein, he prays that the property be partitioned by licitation. The property, briefly described, consists of a tract *509 of land 150 feet in width, being 75 feet on each side of the center line of the Illinois Central Railroad Company's tract as formerly located in the NW ¼, Sec. 11, T. 17 N., R. 14 W., Louisiana meridian, Caddo Parish, Louisiana.
Made defendants were Dr. C. E. Boyd, Daniel Michael Kline, Illinois Central Railroad Company, and the absent and unknown heirs of Eliza S. Harris Watson, represented herein by a curator ad hoc.
There was judgment in plaintiff's favor on his alternative demand. Ownership of the property in indivision was decreed as well as the interest of each of the several owners. From this judgment, only Dr. Boyd appealed.
The record establishes these pertinent facts:
Eliza Harris acquired from William M. Roberts on April 12, 1841, the pertinent portion of the quarter-section hereinabove described, comprising 145.73 acres. By a marriage contract entered into by and between her and Matthew Watson, to whom she was subsequently married, it was stipulated that Eliza Harris should retain complete control and management of her separate and paraphernal property, particularly the realty above described. It was further stipulated that any other property which she might obtain through purchase with the income or earnings of her separate property would also be her separate and paraphernal property and under her separate control and management. By instrument styled "Right of Way" dated September 1, 1853, Matthew Watson, alone and in his individual capacity, purported to convey certain rights in the aforesaid property of his wife to the Vicksburg, Shreveport & Texas Railroad Company, a predecessor of the Illinois Central Railroad Company. The material provisions of this instrument are:
"Know all men by these presents that I Matthew Watson of the Parish and State aforesaid for and in consideration of the enhanced value accrued and hereafter to accrue to my land and other property by the passage of the Vicksburg, Shreveport and Texas Rail Road through the same as shown by the survey and location of said road now on file in the office of said company at Monroe ... [And for the further consideration of two dollars the receipt of which sum is hereby acknowledged do hereby grant, bargain, sell, transfer and deliver unto the Vicksburg, Shreveport and Texas Rail Road Company the quantity of seventy five feet of land on each side of the middle of the line of said road as located by the survey aforesaid through certain tracts of land lying in Sections twenty one, sixteen and fifteen and eleven Township Seventeen and Range fourteen. The above sale of seventy five feet on each side of the road aforesaid being for the right of way to said road through the land aforesaid. And the said Vicksburg, Shreveport and Texas Rail Road Company are not to use the said land for any other purpose than the right of way.]"
The railroad was constructed and placed in operation. The property was used for railroad purposes for many years. Thereafter and many years ago, the railroad was abandoned and the tracks removed from the property. However, the property was not shown to have been placed in any other use by either the Illinois Central or its predecessors.
Under date of October 15, 1964, the Illinois Central executed its deed purporting to sell to N. B. Stoer, without any warranty of title whatever, the property with which we are herein presently concerned. By a similar conveyance, without warranty, Stoer purported to sell the property to Dr. C. E. Boyd.
Subsequent to the execution of the aforesaid deed to Stoer, the Illinois Central, under date of November 5, 1964, purported to sell to Daniel Michael Kline a portion of the property described in the conveyance to Boyd. This Kline tract comprised a lot 73 feet wide and 116.35 *510 feet in length, located at the east end of the so-called Boyd tract.
Boyd's and Kline's claims of title are based upon the aforesaid chain. Neither can be sustained for these reasons:
First, Matthew Watson was without title to the property and no authorization is shown for his execution of the instrument to the Vicksburg, Shreveport & Texas Railroad Company. The record contains no instrument in writing to that effect. A mandate to contract to buy or sell realty must, like the contract itself, be in writing. LSA-C.C. Art. 2997; Bolding v. Eason Oil Company, 170 So.2d 883, 891 (La.App., 4th Cir., 1965); Turner v. Snype, 162 La. 117, 110 So. 109 (1926), and the numerous authorities therein cited. See, also: LSA-C.C. Art. 2992; Centanni v. A. K. Roy, Inc., 258 So.2d 219, 223 (La. App., 4th Cir., 1972); Stovall v. Sonia Realty Company, 83 So.2d 412 (La.App., Orl., 1955writ denied, 1956).
We had occasion to point out in Brewster Development Company, Inc. v. Fielder, 271 So.2d 299, 303 (La.App., 1973writs refused, 1973), that:
"... parol evidence is not admissible to establish that either the vendor or vendee in a deed acted in any other capacity than that represented in the deed, nor that the vendor was acting not in his individual capacity as owner of the property but as the agent of another. Pike v. Kentwood Bank, 146 La. 704, 83 So. 904 (1919); Sladovich v. Glaser, 150 La. 918, 91 So. 297 (1922); Serio v. Chadwick, 66 So.2d 9, 15 (La.App., 2d Cir. 1953)."
Secondly, Boyd's and Kline's claims as owners of the property are without merit and are untenable for the reason that the claims of their predecessors' railroad companies are based upon a grant of a right of way, a servitude, and not upon a fee simple title. The instrument from Matthew Watson to the Vicksburg, Shreveport & Texas Railroad Company, the pertinent recitals of which are quoted hereinabove, evidences on its face the type or character of the grant, as already noted, as being a "Right of Way" and restricts the use of the property to railroad operations.
Nor do we find any merit in a claim of title by virtue of prescription. The possession of the railroads was not as owners, which is a requisite in any plea of prescription, but, as noted, was predicated upon a servitude. Moreover, whatever possession, if any, has been exercised by either Boyd or Kline has been only since 1964, a period of time insufficient in duration to serve as the basis for a plea of prescription.
The record reflects that plaintiff, Bray, acquired certain interests in the property from the heirs of Eliza S. Harris Watson, who was the last record owner of the property. No serious contention is presented as to these purchases nor as to the judgment decreeing the ownership of the property in indivision other than, of course, through the titles procured by Boyd and Kline from the Illinois Central which, as heretofore shown, are without merit.
Dr. Boyd, however, now claims that by virtue of a contract between him and plaintiff, Bray, wherein he agreed to sell and Bray agreed to buy a larger tract of land which included the tract involved in this litigation, Bray's purchases inured to his, Boyd's benefit, and that, accordingly, he should be decreed the owner of the interest acquired by Bray. We find no valid basis for this contention. There is no written agreement in the record to that effect or that Bray acted as agent of Dr. Boyd in making these purchases.
The authorities noted hereinabove with reference to another phase of this case forbid any proof of such relationship other than by a written instrument, except, perhaps, in cases where, as a witness, one confesses the fact or admits it in answers to written interrogatories. That is not the situation presented here. Moreover, the *511 testimony on this point reveals only a state of disagreement as to what Dr. Boyd would do toward reimbursing Bray for his expenditures and expenses in acquiring the interest in the property. Dr. Boyd was apparently noncommital; he did not testify in the case.
It appears appropriate to also point out that Dr. Boyd never offered or tendered title to the property to Bray or to fulfill his obligation under his contract. The fact is that he was never in position to convey title to Bray inasmuch as he never held a valid title to the property. Had Bray insisted upon compliance, Dr. Boyd could not have complied by furnishing a valid, merchantable title. There is, in our opinion, no basis for Dr. Boyd's complaint in this regard. His inability to comply was occasioned through no fault of Bray.
Finding no fault with the judgment appealed, it is accordingly affirmed at appellant's costs.
Affirmed.