407 So.2d 524 (1981)
Barbara Johnson SANDERS
v.
PLAQUEMINES CABLE TV, INC. Plaquemines Cablevision, Inc.
No. 11962.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 1981.
*525 Richard W. Bussoff of Monroe & Lemann, New Orleans, for intervenor-defendant-appellant.
Darryl W. Bubrig Sr., of Bubrig & Scandurro, Buras, for defendant.
Emile E. Martin, III, Belle Chasse, for plaintiff-appellee.
Before REDMANN, STOULIG and THOMAS M. McBRIDE, III, JJ.
THOMAS M. McBRIDE, III, Judge Ad Hoc.
This action was brought by petitioner, Barbara Johnson Sanders, who sought the removal of several alleged encroachments on property she purchased from her father in Plaquemines Parish on November 25, 1977. On February 16, 1965 her father leased a forty foot (40') square section of land, approximately three hundred fifty (350') feet to the rear of his property, to Buras Video Company Inc. Buras Video subsequently changed its name to Plaquemines Cable T.V., Inc., and thereafter sold its assets to Plaquemines Cablevision, Inc.
The petitioner alleged eight (8) encroachments by defendant in her petition. Two (2) of the alleged encroachments were removed by the defendant prior to trial, therefore the trial court was concerned only with the following alleged encroachments:
(1) A metal building and part of a tower;
(2) A carport attached to the metal building;
(3) An overhead service cable running from the tower to the satellite or disc located on adjacent property;
(4) A cable on the upriver-side of the leased premises leading from the tower to a pole;
(5) A power line leading from the metal building on the leased premises to a pole; and
(6) A telephone line leading from the metal building on leased premises to a house located near the highway.
The trial court held in favor of Plaquemines Cablevision, Inc., concerning four of the six encroachments; provided the metal building and tower were within the forty foot square leasehold and that all cable, electric or power lines, except for the service cable running from the tower to the disc on adjacent property, were erected prior to the Louisiana Supreme Court's decision in Lake Inc. v. Louisiana Power and Light Co., 330 So.2d 914 (La.1976) and were therefore covered by the "St. Julien Doctrine", (St. Julien v. Morgan La. and Tex. Realty Co., 35 La.Ann. 942) giving Cablevision power of expropriation.
The trial court found that the carport was not contained within the forty foot square leasehold and thus was an encroachment and this is conceded by defendant-appellant. Further, it was held that the overhead cable extending from the tower to a disc on adjacent property was erected subsequent to the Lake decision, supra, and thus was an encroachment.
*526 Defendant-Appellant, Plaquemines Cablevision, Inc., suspensively appealed contending the trial court erred in holding that the cable was an encroachment; and alternatively, that if it is, the trial court should have proceeded to determine if Mrs. Sanders was entitled to damages under the doctrine of Inverse Expropriation and R. S. 45:781 and 19:14.
We first address the issue of whether or not the overhead cable, extending from the tower on the leasehold to a satellite or disc on adjacent property is an encroachment.
It is clear from the evidence and testimony that the overhead cable extended outside of the forty foot square leasehold granted to defendant. However, the defendant submits that the only property of petitioner over which the overhead cable extends is a road which they were given the right to use. The lease provided in part:
"Lessor further grant lessee a right to use the existing road leading from State Highway No. 23 through their other lands. In addition, Lessee is given the right to locate four guy lines on lessor's adjacent properties, said guy lines to be used in support of community television antenna."
The Defendant-Appellant construes this clause to give it the right to run a cable across the road from their leasehold to adjoining land. Defendant is in error. The right to use the road arises from and is governed by the above quoted language which grants defendant a conventional servitude of passage plus the right to locate four guy lines outside the leased 40 × 40 foot portions.
"The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate." Article 705-La. Civil Code.
"Right of passage, or right of way, is a `servitude' and when it is the result of a contract its extent and mode of use is regulated by that contract." Clause v. Broussard, 146 So.2d 828 (3rd Cir.-1962)
"Parties may by their contract limit the extent and mode of using a servitude of passage." McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080 (3rd Cir.-1977)
Defendant's contention is further negated by the language pertaining to the guy lines and the finding of the trial court that the road ended prior to the point where the cable crossed. If the defendant had desired to conventionally obtain the right to run its satellite cable across plaintiff's land it would have negotiated as it did for the right to string and anchor its guy lines. The non-inclusion limits defendant's right to one of ground passage only.
"Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080 (3rd Cir.-1977)
The finding by the trial court that the overhead service cable from the leased property to the satellite disc on adjoining lands is an encroachment over plaintiff's remaining property is correct and will not be disturbed. Deshotel v. Aetna Casualty and Surety Company, 269 So.2d 850 (3rd Cir.-1972).
Defendant-Appellant contends that if the cable is an encroachment it is entitled to have the cable remain and that plaintiff's remedy is one in damages under the "Doctrine of Inverse Expropriation", R.S. 19:2, R.S. 19:14 and R.S. 45:781.
R.S. 19:2"Where a price cannot be agreed upon with the owner any of the following may expropriate needed property:... (6) Any domestic or foreign corporation created for the purpose of transmitting intelligence by telegraph or telephone; ..."
R.S. 19:14"... In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, *527 taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking and he shall be entitled only to bring an action of judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title." Emphasis added.
R.S. 45:781"A. Corporations, domestic or foreign, formed for the purpose of transmitting intelligence by telegraph or telephone or other system of transmitting intelligence, may construct and maintain telegraph, telephone or other lines necessary to transmit intelligence along all roads ... Such companies, shall be entitled to the right of way over all lands belonging to the state and over the lands, privileges and servitudes of other persons, ... upon making just compensation therefor. If the company fails to secure such right by consent, contract or agreement upon just and reasonable terms, then the company has the right to proceed to expropriate as provided by law for railroads and other works of public utility..."
Assuming arguendo that cable television proprietors have a right to expropriate servitudes they must strictly comply with the enabling statute. This defendant has failed to do. It has not tried to secure such right by consent, contract or agreement upon just and reasonable terms with the owner of the property, Mrs. Sanders.
Mr. Virgil Jackson, formerly connected with Plaquemines Cable T.V. testified that the matter of the satellite cable was not discussed until 1978 and that the cable was installed in February 1978. Mr. Jackson further testified that the matter was mentioned to Mr. Johnson who said "It was okay".
Mrs. Sanders acquired the property from her father on November 25, 1977 and the act was placed of public record on December 6, 1977, being recorded in COB 461, folio 253. Mr. Johnson therefore could not grant the right to run cable nor could he acquiesce in its erection. Bray v. Boyd, 286 So.2d 508 (2nd Cir.-1973-Cert. denied).
The trial judge correctly construed R.S. 19:2 and R.S. 19:14 in denying defendant the right of "Inverse Expropriation" as R.S. 19:2 does not grant the right of expropriation to Cable Television Companies and thus they cannot have the right of "Inverse Expropriation" under R.S. 19:2.
Defendant's right to expropriation under R.S. 45:781, if any, must be done in compliance with the provisions of that chapter.
Accordingly, the judgment is affirmed.
AFFIRMED.