WATKINS, Judge.
This is an action seeking an injunction brought by plaintiffs to require defendants, Fillmore J. Hurst and Elizabeth Anne New Hurst to restore an easement to its original condition by the removal of a boat house and flower bed bordered by railroad cross-ties that defendants had placed on the easement. Plaintiffs also sought damages for being forced to construct a new septic tank as they were prevented from cleaning and maintaining the original septic tank by miscellaneous equipment placed on the lid by defendants. The trial court granted the injunction sought by plaintiffs and rendered judgment in favor of one of the plaintiffs, Ernest W. Harthcock, in the sum of $500.00 as damages for interference with the use of the septic tank. We affirm.
The issues presented can be best understood by referring first to a plat of survey prepared by Daryl B. Patin, Registered Land Surveyor, and introduced at the trial as Exhibit P-1. This plat is based upon a survey made by Patin on July 16, 1974, and brought up to date on January 11, 1978. The plat is below reproduced.

*638

By act of sale with mortgage dated July 17, 1974, Joseph N. Robillard conveyed to Ernest W. Harthcock and Alvin C. Kimble, two of the present plaintiffs (the other plaintiffs being Joseph Alexander Stott and Mrs. Nina Laverne Payne Stott), Lot G which bordered False River in Pointe Cou-pee Parish (which comprised the lots later divided into Lots G-l and G-2 as shown on the above plat of survey). Also conveyed was a servitude or easement of passage, which is shown on the above plat as “Exist *639 ing Easement”, and which lies immediately to the east or east-north-east of Lot G. The servitude and the rules regulating the extent and use thereof are set forth as follows in the act of sale with mortgage.
“Vendor further declared that he is the owner of the lot of ground shown on the attached plat of survey immediately to the east of said Lot G herein conveyed, which lot has a front of 24.70 feet on the northerly right of way limits of La. Highway No. 413 by a depth to False River and a width on False River of 30.10 feet, and that, in further consideration of the purchase price paid to him by purchasers herein, he hereby grants unto purchasers, their heirs and assigns, a perpetual easement over and across said lot of ground for purposes of passage. Said easement shall not be exclusive to purchasers, however, and vendor reserves the right to use said lot as he sees fit and to grant to any other persons the right to use said lot as long as said use does not interfere with the easement granted to purchasers herein. Vendor will not be responsible for damages of any sort to any persons or property on said lot, however occasioned, and purchasers shall hold vendor harmless from any claims by or liability to third persons however arising on said lot when their presence on said lot is derived by permission of purchasers.”
The act of sale with mortgage was duly recorded in the conveyance records of Pointe Coupee Parish.
The act of sale with mortgage also conveyed to the vendees the use of a septic tank partially situated on the property of vendor, the lid of which was located on the easement. The language concerning the septic tank was as follows:
“The septic tank serving the camp described ‘Second’ herein is included in the present sale but it is partly situated on property of vendor. It is agreed by and between the parties hereto that should vendor, his heirs, or assigns, decide to move said septic tank, it shall be moved by vendor, his heirs or assigns at their expense to a location on property of purchasers agreeable to vendor and to purchaser.”
On August 17, 1976, Robillard sold by act of sale with mortgage to Fillmore J. Hurst and Elizabeth Anne New (now Hurst), the present defendants, Lots D, E, and F as shown on the plat of survey.
By cash sale dated January 17, 1978, Ernest W. Harthcock, Mrs. Hilda LeBlanc Harthcock, Alvin E. Kimble, and Mrs. Patricia Mayeaux Kimble sold Lot G-l to Joseph Alexander Stott and Mrs. Nina Laverne Payne Stott, the vendors retaining Lot G-2.
At some later time the Hursts laid a flower bed surrounded by railroad crossties partly on their own property and partly on the easement. They also built, entirely on the easement, a boat house, near the bank of False River, so that it was impossible for the Harthcocks and Stotts to launch boats into False River from the easement. Also, the portion of the flower bed which lay on the easement interfered with use of the easement by the Harthcocks and Stotts.
The Hursts concede that the Stotts and Harthcocks hold an easement, but contend that the easement exists only to permit entry onto the rear portion of Lot G from the highway, and was not intended to grant access of boats and boat trailers to False River for launching purposes.
However, we see the plat of survey shown above which is similar to the plat of survey annexed to the act of sale with mortgage for Robillard to Harthcock and Kimble, clearly shows the easement as extending to the water’s edge, and as being 24.7 feet in width along Highway 413, and 30.1 feet in width at the water’s edge. Clearly, the purpose of the easement was to permit passage to the water’s edge as well as to the portion of Lot G abutting the water. (It will be remembered that the act of sale with mortgage which created the easement conveyed to Harthcock and Kim-ble the whole of Lot G.) It would be senseless to grant an easement extending to the water’s edge if the purpose of the easement was not to grant access to the water.
Furthermore, it was held in Clause v. Broussard, 146 So.2d 828 (La.App. *640 3d Cir. 1962), that if a servitude of passage is granted by boundaries, the right to use the servitude extends to the limits of the boundaries. It is quite true, as appellants point out, that in the present case, unlike Clause, the owners of the servient estate reserved the right to also use the lot as he saw fit, “so long as said use does not interfere with the easement granted to purchasers herein.” The extent and mode of exercise of a servitude of passage may be regulated by the title establishing the servitude. LSA-C.C. art. 705. However, as we have seen, the boat house and portion of the flower bed placed on the easement interfered with the use of the easement and so violated the very language quoted. The Hursts may use the easement, but only so long as they do not interfere with the use of the easement to the boundaries thereof by the owners of the dominant estate.
With regard to the septic tank, Harthcock and Stott were granted an unqualified right to its use. When Harthcock attempted to open the lid of the septic tank, which was located near the boat house, he found assorted odds and ends of equipment on top of the lid. He attempted to talk to Mr. Hurst but Mr. Hurst refused to speak to him. It was stipulated at the trial that if a plumber, Mr. Camille LeJeune, had been called to testify, he would have testified that he had gone to the premises and found the septic tank was full of water. The septic tank needed to be pumped out periodically, and it is apparent from the stipulated testimony that this had not been done. The obvious reason the septic tank had not been pumped out was that Harthcock was prevented from opening the lid by the debris on top of the tank in the vicinity of the boat house. As Harthcock was forced to build a different septic tank on his own lot, and as the original septic tank was conveyed to him by the act of sale with mortgage from Robillard to Harthcock and Kim-ble, and as Hurst wrongfully interfered with use of that septic tank, he is liable in damages.
The sum of $500.00, which was awarded, is a minimal amount which was clearly justified by the record.
Accordingly, the judgment of the trial court is affirmed, at appellants’ cost.
AFFIRMED.