## No. 1186.

### JOHN N. PHARR VS. MARTHA COLLINS ET ALS.
### JOHN CALDER, INTERVENOR.

A common carrier cannot seize goods for a debt due himself individually and wholly uncon-
nected with the shipment, while they are in transit and for the safe carriage and delivery
of which he has given a bill of lading. He cannot protect his private interests at the
expense of his public duty as a carrier.

The carrier is in some sort a public officer, invested with power, burdened by duty, and held
to responsibility. He cannot by his own act prevent himself from doing his duty. He
cannot place an obstacle in the way of performing his contract, and then plead that
obstacle as an excuse for not performing it.

APPEAL from the Nineteenth District Court, Parish of St. Mary.
*Goode*, J.

---

*P. H. Mentz* and *M. J. Foster* for Plaintiff and Appellee:

A being indebted to B, delivers property to B to sell, and to apply the proceeds to the extin-
guishment of the debt; the title to the property remains in A. 8 An. 435; 12 An. 672; 31
An. 600; Allen, Nugent & Co. vs. Ben Buisson, 35 An. not reported; H. D. p. 839.

Such a contract makes B the agent of A. 8 An. 435; 12 An. 672; H. D., p. 839.

Intervenor makes the following allegation, viz: "The sugar and molasses belonged to the
owners of the Bedell Plantation in the Parish of St. Mary, and was turned over to the
plaintiff (in intervention) to be sold and the proceeds applied to the satisfaction of a claim,
held by him against them;" this judicially declares that the title to the property re-
mained in the Bedells, and that intervenor held it for them. See authorities quoted
above.

It is essential to the contract of sale, that there should be a fixed price and a weighing. C.
C. 2439, 2458, 2459, 2464. And these things are likewise essential to a *dation en paiement.*
C. C. 2656.

An insolvent cannot make a *dation* to the predjudice of creditors. C. C. 2658. The law
"forbids" this, hence it is absolutely null. C. C. 12; 6 La. 82.

In a *dation* everything doubtful or ambiguous is construed against the donee. 3 An. 280.

An intervenor claiming ownership is confined to his plea; and cannot question the plaintiff's
proceedings, nor the manner in which the seizure was made. 8 M. 55; 8 R. 123; 21 An.
118.

To repel the intervenor, plaintiff has only to show that intervenor is not owner. 8 La. 143.

When an agent transfers the property of his principal to extinguish his own debt, the trans-
fer is absolutely null. H. D. 853.

The pledgee of a judgment represents the pledgor in collecting it.

A bargain made by a seizing creditor, with a seized debtor, in order to prejudice a superior
creditor, in which it is stipulated that the sheriff, who agrees to it, shall dispose of the
property in violation of law, is absolutely null and void.

If A invoke an estoppel against B, and destroy the assumed effect of the estoppel by his own
pleadings and his own testimony, he cannot complain of B who stands by and sees him
lose his case.

A party who creates an apparent condition of things by interposing persons as agents while
representing them as principals, has no ground for estoppel against the person who was
influenced to act by the concealment of material facts. 33 An. 1198.

The essential features of estoppel are: 1, that there must be a false representation or conceal-
ment of material facts; 2, made with the knowledge of the facts; 3, to a party ignorant
of the truth of the matter; 4, with the intention that the other party should act on it,

and 5, which induced the other party so to act. Bigelow on Estoppel, Outline, p. lxxxi; Idem, pp. 484, 501, 529, 541, 549; Wait's Actions and Defences, 6th Volume, verbo Estoppel, p. 567; 5 R. 523; 1 An. 11; 5 An. 368; 9 An. 528; 30 An. 50; 30 An. 201; 33 An. 1198.

A creditor who seizes the property of his debtor cannot claim the property as his own, so long as the sheriff, by his direction, holds the property under the writ issued at the creditor's instance. 28 An. 60.

Bills of lading are assignable; but are not negotiable; and are symbols of the property named in them. The endorsement and transfer of a bill of lading conveys no more title than the endorser had. Hutchinson on Carriers, p. 100, Sec. 129; Idem, p. 338, Sec. 414.

### D. Caffery for Intervenor and Appellant:

1. A common carrier cannot dispute the title of the shipper of the goods. When a third person claims the ownership, the carrier withholds the delivery at his peril. Story on Bailments, Sec. 582; Hutchinson on Common Carriers, Secs 406, 407; Kent's Com. Vol. 2, part V., Sec. XL., p. 604.

2. The carrier's contract to deliver according to the directions of the shipper, is absolute. "The act of God and the kings enemies," inevitable accident, or the excepted perils of the bill of lading, will only excuse a non-delivery. Story on Bailments, Secs. 489, 490; Hutchinson, 338.

3. Under the Code, carriers are subject to the same responsibilities as tavern keepers, under the title of deposit, and no depositary can withhold the thing deposited on pretense of a debt due to him from the depositor, on an account distinct from the deposit, or by way of offset. Rev. C. C. 2756, 2956. And every carrier is a bailee or depositary. Hutchinson, Sec. 1.

4. The bill of lading is conclusive on the carrier as to the ownership of the goods. The consignee, unless the bill is so drawn as to show *jus disponendi* in the consignor, is the absolute owner, so far as the carrier is concerned. Hutchinson, Sec. 130; Benjamin on Sales, book 2, chap. 6, (see foot note).

5. A carrier, contracting to carry beyond his own route, is bound for the whole distance, notwithstanding a connecting carrier is to carry a part of the distance. Hutchinson, Sec. 145.

———

The opinion of the Court was delivered by

MANNING, J. The plaintiff Pharr held a mortgage upon the Bedell plantation in St. Mary owned by the defendants, and was also a privileged creditor for supplies furnished and advances made in 1880 to enable the owners to work it.

Calder the intervenor was a creditor of the same parties, and held as collateral a recorded judgment against two of the owners of the plantation. In December, 1880, Calder had execution issued upon this judgment, and the sheriff seized a portion of the sugar and molasses then in the sugarhouse. Shortly thereafter the sheriff, under an agreement between the seizing creditor and the defendants, the seized debtors, shipped 35 hhds. of sugar and 50 bbls. molasses to New Orleans, to be sold for the benefit of the parties.

The shipment was made on Pharr's line of steamboats plying the Teche, and connecting with the Morgan Railway, which took the steamer's freight from Morgan City to New Orleans. A through bill of lading was given the sheriff by the clerk of the steamer for the

transportation of the goods from the point of shipment to New Orleans. This bill was transferred to Calder.

When the steamer reached Morgan City the sugar and molasses were landed on the Railway wharf at the usual place where the Railway took in the steamer's freight, and instead of being forwarded was detained three or four days by Pharr. He had learned that the sugar was from the Bedell plantation and determined to seize it. Hutchinson of the Railway telegraphed him from New Orleans to let it come forward lest liability for damages be incurred, but it did not go forward and was finally seized by Pharr under a sequestration issued in this suit upon his privileged claims. Calder bonded it, having intervened to protect his interest.

The question is thus presented: can a common carrier seize goods while in transit, for which he has given a bill of lading, to satisfy a debt due himself, not for charges of transportation but wholly outside of the shipment, and due not by the shipper but by the parties from whom the shipper derived the goods.

Common carriers are held to the strictest responsibility. Public policy required it in the beginning of commerce, and as trade developed and commerce increased, experience demonstrated the wisdom of the rules already formed and judicial construction added to them, and completed a system which all courts concur in enforcing.

The carrier is likened to the depositary and cannot withhold the goods on the pretence of a debt due him by the shipper, and *a fortiori* he is forbidden to adopt the pretence of putting them in the custody of the law to be there held to satisfy a debt due him wholly unconnected with the shipment, and not due by the shipper but by other parties.

Irresistible force unless from the King's enemies has been said not to relieve the carrier when he has been robbed of the goods, and this because otherwise he might undo all who have dealings with him by combining with thieves, and promoting the robbery in such clandestine way as to be undiscoverable. Story on Bailments, § 490. The same principle of public policy must restrain a carrier from seizing goods which have been placed in his custody, and for the safe carriage and delivery whereof he has contracted with a shipper, for it would not be difficult for him by collusion with others who sought to enforce claims upon the goods to hamper and impede the transit of them, and thus defeat the object and purpose of the shipper, and destroy confidence and trust in a business which contributes equally to public convenience and to private gain.

The carrier is in some sort a public officer, invested with power, burdened by duty, and held to responsibility. He cannot by his own act prevent himself from doing his duty. He cannot place an obstacle in the way of performing his contract, and then plead that obstacle as an excuse for non-performance of it. If sued upon the bill of lading, he could not plead his own seizure of the goods, while in transit, to satisfy a debt not due him as carrier, but individually, as a bar to recovery.

The case is as strong for Pharr as it could well be for any carrier. He had a privilege individually on this sugar for supplies furnished in making it. The sugar was being removed under his eyes, and the law gave him process to retain it. But he cannot make his duties as carrier secondary or subservient to his individual interests. The highest demands of public policy require that we shall enforce his duty as carrier to be detriment of rights which he could have enforced if he had not been a carrier.

It is therefore ordered and decreed that the judgment of the lower court maintaining the plaintiff's writ of sequestration, and recognising his privilege upon the produce sequestered, is avoided and reversed, as also that part of the judgment which orders the restitution of the produce or the payment of the proceeds of its sale by the intervenor to the plaintiff. And it is further ordered and decreed that the intervenor John Calder have and recover of the plaintiff John N. Pharr his costs in both Courts, and that in other respects the judgment below be and remain undisturbed.

---

### On Application for Rehearing.

BERMUDEZ, C. J.   The decree made in this case is not to be construed as denying that plaintiff had a privilege at the time he resorted to the sequestration, for the opinion formally recognizes such security. We held merely that, under the circumstances, that privilege could not be made the foundation for the sequestration asked, granted and sustained.

Neither is the decree to be so construed as to be a final judgment on the rights of the intervenor to the sugar or its proceeds free from such plaintiff's privilege.

Rehearing refused.