370 So.2d 686 (1979)
Joan BROOKS
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 9954.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1979.
Rehearing Denied May 17, 1979.
Writ Refused June 15, 1979.
*687 W. Monroe Stephenson, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Raymond J. Salassi, Jr., G. Bruce Kuehne, New Orleans, for defendant-appellee.
Before SAMUEL, BEER and GARRISON, JJ.
GARRISON, Judge.
Joan Brooks owns property on which, at some time prior to her purchase of the land in 1972, New Orleans Public Service, Inc. (NOPSI) placed a guy pole to support a powerline structure located on adjacent property. In 1977, Brooks filed suit against NOPSI to recover compensation for a continuous taking or servitude and to recover damages for mental anguish and harassment and for fear of potential harm to her children, occupants, and invitees. Defendant NOPSI filed exceptions on four separate grounds: prescription, no right of action, acquisitive prescription, and no cause of action. The trial judge divided plaintiff's claim into two causes of action: one for compensation under expropriation law and one in tort for trespassing. He ruled that she had no cause of action under expropriation law and that her tort action had prescribed, and dismissed her suit. Plaintiff appeals from this ruling. We affirm, for the reasons set forth below.
This case is another skirmish in the continuing battle over expropriation powers of quasi-public corporations. For many years, such entities were allowed to acquire servitudes on private property through appropriation by unopposed use and occupancy. *688 This theory, known as the St. Julien doctrine and set forth in the case of St. Julien v. Morgan La. and Tex. Ry. Co., 35 La.Ann. 942 (1883), provided that a public or quasi-public corporation having expropriatory powers could acquire a servitude where the landowner consented or acquiesced in its appropriation. The landowner had only a right to compensation for use of the servitude and for damages to his property if any. The St. Julien doctrine was reaffirmed in many later cases and remained the rule until 1976, when it was partly overruled by Lake, Inc. v. Louisiana Power and Light Co., 330 So.2d 914 (La.1976). The Lake case abolished the St. Julien doctrine with respect to discontinuous servitudes, on the ground that the doctrine conflicted with the specific mandate of La.Civ.Code Art. 766. (Art. 766 provides that discontinuous servitudes may be established only by title.) However, the Lake court made its ruling prospective only, "affecting conduct occurring after the finality of this judgment." 330 So.2d at 918.
The state legislature reacted promptly to the Lake decision by enacting R.S. 19:14 (Act 504 of 1976), which provides in pertinent part as follows:
"In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title."
In essence, this statute reinstated the St. Julien doctrine, with some limitations.
The Lake case also held that an electric transmission line is a discontinuous apparent servitude because it needs the act of man to be exercised. 330 So.2d at 917. The court followed the reasoning of Nash v. Whitten, 326 So.2d 856 (La.1976), which held a natural gas pipeline to be a discontinuous servitude because the act of man was required for its exercise and the term "act of man" included the operation of machinery necessary for the servitude's exercise. The reasoning leading to such a designation has been questioned by several writers.[1] Although the ruling in Lake regarding appropriation by use and occupancy was prospective as to conduct occurring after the judgment, logically its holding as to designation of the servitude must be considered to apply to any servitude existing at the time the Lake case was decided, and thus would be applicable to the electric powerline here. The servitude involved here, however, is not for the powerline itself, but simply for the placement of a pole on plaintiff's land. As NOPSI states in its brief,
"The only thing which is located partially on petitioner's land is a single guy pole. This guy pole is not energized, nor is it connected to an energized wire. Its only function is to maintain tension against structures on the adjacent land, which in turn support electrical transmission wires. It requires no `act of man' to use the guy pole. It fulfilled its entire function (holding up the utility pole) before the electrical transmission lines were set in place and it would continue to fulfill its entire function regardless whether electrical energy flowed through the lines or not." *689 Certainly, under the reasoning of either Nash v. Whitten or the Lake case, the guy pole of itself should not be considered a discontinuous servitude. Still, the guy pole is unquestionably an integral part of the transmission line structure and fulfills an indispensable function. As such, it must be considered an indivisible part of the powerline and so must be classified in the same way as the powerlinethat is, as a discontinuous servitude. Thus, we must consider the substance of the St. Julien-Lake-R.S. 19:14 conflict, although the entire discussion could be avoided if we were to consider the guy pole as a continuous servitude and thus not subject to the Lake decision.
One of the effects of R.S. 19:14 is to make the St. Julien doctrine applicable to discontinuous servitudes, since R.S. 19:1 defines "property" for purposes of general expropriation law as including "servitudes and other rights in or to immovable property." As noted in a recent decision by this court,
"The court in Lake did not overrule the St. Julien doctrine on constitutional grounds, but on the basis of its inconsistency with codal provisions. La.Acts 1976, No. 504, as a legislative enactment, now has equal status with the codal provisions."Trustee Corp. v. Allen, 359 So.2d 715 at 718 (La.App. 4th Cir. 1978).
Another effect of R.S. 19:14 is to set a prescriptive period for an owner's claim for compensation. Cases interpreting the St. Julien doctrine had set no specific time limitations; a brief period of unopposed occupancy was enough to give the taker the benefit of the doctrine. See Gumbel v. New Orleans Terminal Co., 173 So. 518 (La.1937). R.S. 19:2.1, to which R.S. 19:14 refers, provides as follows:
"A. The rights of expropriation granted in R.S. 19:2 shall be exercised in the following manner:
(1) A petition shall be filed by the plaintiff in the district court of the parish in which the property to be expropriated is situated. However, where the property to be expropriated extends into two or more parishes and the owner of the property resides in one of them, the petition shall be filed in the district court of the parish where the owner resides; but if the owner does not reside in any of the parishes into which the property extends, the petition may be filed in any of the parishes into which the property extends. In all such cases, the court wherein the petition is filed shall have jurisdiction to adjudicate as to all the property involved.
(2) The petition shall contain a statement of the purposes for which the property is to be expropriated, describing the property necessary therefor with a plan of the same, a description of the improvements thereon, if any, and the name of the owner if known and present in the state.
(3) The petition shall conclude with a prayer that the property be adjudicated to the plaintiff with just compensation paid to the owner, as provided in this part.
B. All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation." (Emphasis added.)
Thus, the St. Julien doctrine, as reinstated by R.S. 19:14, now has added to it a prescriptive period of two years within which the property owner must make his claim for compensation.
In the case before us, the trial judge (citing Trustee Corp. v. Allen, supra) concluded that if the St. Julien doctrine did not apply, then R.S. 19:14 did, and accordingly plaintiff had no cause of action. As stated previously, plaintiff purchased the property in 1972 but did not file suit until 1977, a lapse of five years. The guy pole was on her property when she purchased it, a time when the St. Julien doctrine was, to use the words of the trial judge, "in full flower." The Lake case could not be applicable because its ruling was intended to affect only conduct occurring after the judgment in it became final. Thus, plaintiff's claim must be decided either under St. Julien or under R.S. 19:14.
Under the St. Julien doctrine, appellant's acquiescence by delay clearly would have *690 precluded her from suing for removal of the servitude structure, but she would not have lost her right to compensation. Nonetheless, an essential element of the St. Julien doctrine was that the right to compensation is a right personal to the owner of the property at the time the servitude is taken. Because the right does not attach to the land, it can be conveyed only by express subrogation from the vendor to the vendee. Without an express transfer, one who buys property subject to a St. Julien appropriation has no right of action. Gumbel v. New Orleans Terminal Co., supra, and cases cited therein.
At the same time, under R.S. 19:14 appellant would have no cause of action for compensation even if she had a right of action, because the prescriptive period of R.S. 19:2.1B would be applicable. Since the two years' period begins running "on the date on which the property was actually occupied and used for the purposes of the expropriation," appellant's time to bring her claim has long since elapsed.[2] Although Brooks contends that the two-year period is applicable only where proceedings are instigated by the expropriating entity, this theory is negated by the very words of R.S. 19:14:
"[S]uch action [by an owner for compensation] shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title."
Brook's alternate contention is that, because her action was filed within two years of the effective date of R.S. 19:14, she is not barred by the R.S. 19:2.1B prescriptive period. We cannot agree with this.
"It is well settled in Louisiana that statutes of prescription are remedial statutes. [Citations omitted.] Because of this classification, courts have normally held that these statutes are applicable to all actions instituted after they became effective even though the cause of action arose, or the facts giving rise to the cause arose, before the statute was enacted. [Citations omitted.]" Lott v. Haley, 363 So.2d 1270 at 1273 (La.App. 4th Cir. 1978).
Accordingly, we agree with the trial judge that, whether the St. Julien doctrine or R.S. 19:14 is applied, the result is the same: plaintiff's claim for compensation must be dismissed.
Having concluded that appellant is not entitled to receive compensation for NOPSI's taking of the servitude, we next consider her claims for other damages. It is clear that incidental or consequential damages such as discomfort, disturbance, inconvenience and mental distress are not compensable under expropriation law. Key v. La. Dept. of Highways, 357 So.2d 1230 (La.App. 2d Cir. 1978); Reymond v. State Through Dept. of Highways, 231 So.2d 375 (La.1970); Texas Pipe Line Co. v. Barbe, 85 So.2d 260 (La.1956); Nagle v. Police Jury of Caddo Parish, 144 So. 425 (La.1932). Appellant's damage claim must therefore be considered to arise in tort as the result of an alleged trespass. In his Reasons for Judgment, the trial judge said,
"Furthermore, if an action of trespass did exist such cause of action would have begun when the property was purchased, i. e., May 23, 1972, hence it would have prescribed prior to the date the within suit was filed, i. e., November 28, 1977 (c. c. Article 3536. See Patin v. Stockstill, 315 So.2d 868)."
We agree with the trial judge. We question whether any trespass existed when Brooks purchased the property, because the circumstances indicate that NOPSI had already acquired a servitude under the St. Julien doctrine and thus was not a trespasser. Veillon v. Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3rd Cir. 1966). Even if NOPSI were a trespasser, however, Brooks knew or should have known of the pole's presence on her property at the time of purchase. Her five-year delay in claiming damages for the alleged trespass bars her from recovery.
Brooks further contends that the alleged trespass was a continuing one, and *691 thus that she should recover damages at least for the year immediately preceding filing of her suit. This position would seem to have some support from the case of Joseph A. Neyrey, Gen. Cont. v. La. P. & L., 347 So.2d 266 (La.App. 4th Cir. 1977), writ denied 350 So.2d 897. In that case, an electric company's trespass by maintaining a pole and transmission line on a plaintiff's property continued until the pole was removed, and a damage suit filed within one year of the pole's removal was timely as to all damages caused by the presence of the pole and line during the entire time the continuing trespass existed. The Neyrey case, however, can be distinguished from the one before us. An operative fact in the Neyrey case was that the electric company had illegally erected the structure on the property. The appellant here has made no showing that the guy pole was illegally placed on her property. It was already there when she purchased the land, and from all that can be discovered in the record the previous owner either consented or acquiesced in its placement on the land. Thus it cannot be considered a continuing trespass because it is not shown to be an illegal construction.
For the foregoing reasons, the decision of the district court is affirmed.
AFFIRMED.
NOTES
[1] See, e. g., Tate, J., dissenting, Nash v. Whitten, 326 So.2d at 862 (La.1976); Tate, J., dissenting, Lake, Inc. v. Louisiana Power and Light Co., 330 So.2d at 918 (La.1976); Lemmon, J., concurring, Lake, Inc. v. Louisiana Power & Light Co., 318 So.2d 911 (La.App. 4th Cir. 1975).
[2] NOPSI alleges in its brief that the guy pole was placed on the property "some time before 1961." The precise date is unimportant here since it is not contested that the pole was there at the time of plaintiff's purchase in 1972, some five years before she filed suit.