485 So.2d 974 (1986)
Mrs. Jules JUNGEBLUT and Mrs. Philip Chetta
v.
The PARISH OF JEFFERSON, CITY OF KENNER, et al.
No. 85-CA-543.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1986.
*975 Matthew P. Chenevert, New Orleans, for plaintiffs-appellees.
Hubert A. Vondenstein, Larry Radosta, Parish Attys., Gretna, Michael J. Power, River Ridge, for defendants-appellants.
Marshall W. Wroten, Harvey Lee Hall, Dept. of Transp. & Development, Office of Highways, Baton Rouge, for defendant-appellee.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from a judgment in favor of plaintiffs, Mrs. Jules Jungeblut and Mrs. Philip Chetta, and against the defendants, City of Kenner and Parish of Jefferson, for the construction of a drainage ditch and pump station on plaintiffs' property.
The facts reveal that plaintiffs, Mrs. Rita Chetta and her daughter, Mrs. Evelyn Jungeblut, each own ½ naked ownership in a parcel of unimproved ground in the City of Kenner. The land is essentially a parallelogram approximately 625 feet on the longer sides and 285 feet on the shorter sides.
In 1966 the Parish of Jefferson constructed a drainage ditch averaging 12 feet in width along the length of the eastern boundary of the property. The City of Kenner built a pumping station in 1975 on a corner of the property. At the time of the construction of the ditch the Parish of Jefferson relied on the assumption that the ground taken was a portion of ground previously dedicated and known as Minden Street. The dedication, however, was revoked in 1941 by the City of Kenner with the strip going to plaintiffs' predecessor in title and ultimately to plaintiffs.
The plaintiffs' property is unimproved and wooded. As a result, the location of the drainage canal was not detected until a survey was made in April, 1978 at the request of Gregory Jungeblut, Mrs. Jungeblut's son. Mr. Jungeblut then began negotiations with the Parish of Jefferson and when negotiations failed, plaintiffs filed suit on September 18, 1980 against the Parish of Jefferson, City of Kenner and the State of Louisiana, Department of Transportation and Development.
Subsequently, all three defendants filed exceptions of prescription of one, two and three years. The exceptions were denied on September 11, 1981. The City of Kenner also filed an exception of no cause of action which was also overruled.
The State of Louisiana was dismissed on motion of plaintiffs, in September, 1983, and the case was tried on its merits December 14, 1983 and April 6, 1984.
On October 23, 1984, the trial court rendered judgment in plaintiffs' favor for Eight Thousand Two Hundred Twenty Dollars and Eight Cents ($8,220.08) plus Seventeen Thousand Dollars ($17,000.00) in attorney's *976 fees against the Parish of Jefferson.[1] Both the defendant, Parish of Jefferson, and the plaintiffs perfected appeals from the judgment.
The defendant, Parish of Jefferson, contends the following:
(1) The district court erred in denying plaintiffs' exception of prescription based on LSA-R.S. 19:14 and LSA-R.S. 19:2.1(B).
(2) The trial court committed error in denying plaintiffs' exception of prescription based on the prescriptive period as set out by LSA-R.S. 13:5111 by not finding that plaintiffs had constructive notice that a ditch had been constructed on their property.
(3) The court's award of seventeen thousand dollars ($17,000.00) attorney's fees was unreasonable.
The specifications of error urged by plaintiffs are as follows:
(1) The lower court erroneously held that the strip of property measuring approximately 635 feet in length and 10½ feet in width on the eastern bank of the drainage ditch which is the subject of this litigation was damaged only to the extent of 50% of the property value, whereas the evidence at trial proved that the damage to plaintiffs was in truth and in fact 100% of its value.
(2) The trial court improvidently held that the drainage ditch itself, which occupies a strip of property approximately 635 feet in length and 12 feet in width, damaged the property only to the extent of 90% of its value whereas the testimony at trial clearly showed that the taking of the property for the purpose of constructing the drainage ditch damaged the property to the full extent of its value.
(3) The court assessed damages based on the value of the property as of the date on which the drainage ditch was constructed, whereas the case law interpreting the relevant statutes in this matter dictates that the appropriate evaluation date is either the date of trial or the date of discovery of the taking.
The Parish of Jefferson first asserts that the action instituted by plaintiffs prescribed under LSA-R.S. 19:2.1(B). The trial judge determined that the prescriptive period of two years found in LSA-R.S. 19:2.1(B) did not apply in this case. The court instead found the three year period of LSA-R.S. 13:5111 to be the proper prescriptive statute and held that the plaintiffs' action was not barred by those provisions. We agree.
LSA-R.S. 19:2.1(B) provides:
"All claims for property by or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property was actually occupied and used for the purposes of the expropriation."
In conjunction with LSA-R.S. 19:2.1(B), LSA-R.S. 19:14 states:
"In any case where the State or its political corporation or subdivision has actually, in good faith believing it had authority to do so, taken possession of privately owned immovable property of another, and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, such owner shall be deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking, but he shall be entitled to bring an action for such compensation, to be determined in accordance with the provisions of Section 9 of this Title, for the taking of his property or interest therein, the just compensation to be determined as of the time of the taking of the property, or right or interest therein, and such actions shall proceed as if the state, its political corporation or subdivision had filed a petition *977 for expropriation as provided for in Section 2.1 of this Title."
Title 19 of the Revised Statutes governs the expropriation of property for public use by the state, municipal corporations or certain other corporations. LSA-R.S. 19:2 states in pertinent part:

"Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property: ..." [emphasis added]
The expropriation statutes then provide the formal procedures to be used, and in LSA-R.S. 19:9 contain the manner in which compensation is to be granted the owner of the expropriated property. In addition to setting out the two year prescriptive period for claims for damages, LSA-R.S. 19:2.1 delineates the formal procedures the expropriating entity shall follow. When those procedures are not followed and the owner has acquiesced or consented to the expropriation, LSA-R.S. 19:14 becomes operative. It is pertinent that this statute provides no prescriptive period and does not preclude the landowner from recovering the value of the property taken, but only prohibits the landowner from evicting the expropriating body from the property. It is also noteworthy that like the old St. Julien doctrine, LSA-R.S. 19:14 requires a good faith taking as well as acquiescence of the owner.
In addition to the statutes cited above, LSA-R.S. 13:5111 provides:
"A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies, shall prescribe three years from the date of such taking." (Emphasis added)
In support of its contention that the two year prescriptive period of LSA-R.S. 19:2.1 applies, defendant, Parish of Jefferson cites this court to the case of Brooks v. New Orleans Public Service, 370 So.2d 686 (La.App. 4th Cir.1979). There plaintiff filed suit to recover compensation for a continuous taking or servitude as a result of defendants actions in placing a "guy pole" on their property. The "guy pole" supported a powerline structure on adjacent property.
While the court in Brooks applied the prescriptive period of LSA-R.S. 19:2.1(B), the issue of differing or conflicting statutes did not arise. It was assumed in Brooks that the case fell within the expropriation statutes. Thus, Brooks is distinguishable from the case herein.
On the other hand, in Powell v. Department of Highways, 383 So.2d 425 (La.App. 4th Cir.1980), writ refused 389 So.2d 1129 (La.1980), decided one year later by the same circuit, the issue was squarely decided. On facts similar to those now before the court, the court held that LSA-R.S. 19:2.1(B) applies only to cases where there has been an expropriation of private property, and not to cases in which there has been an appropriation.
In that case the plaintiff sued the Department of Transportation and Development to recover the value of land taken by the defendant after plaintiff sold a portion of the lot to defendant. Almost 17 years later it was discovered by survey that the defendant's fence and right-of-way monuments encroached upon his property. The court held as above and further stated that in applying LSA-R.S. 13:5111 the three years began to run from date of discovery. The court stated:

*978 "Whereas R.S. 13:5111 is quite specific with the three years running "from the date of such taking." But we cannot ascribe to the legislature such a harsh intent which would deprive plaintiff under the circumstances present here from obtaining compensation for his land. When the statute was re-enacted in its present form by Act 434 of 1975, Subsection B was added to the statute as originally enacted by Act 121 of 1972. This new subsection provides:
The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975.
We interpret this to mean that plaintiff has the same rights as Chenevert had under the ten year prescription of Art. 3544 as interpreted by this court." At page 429.
In holding that the prescriptive period of LSA-R.S. 13:5111 had not begun to run until plaintiffs' discovery of the appropriation through a survey, the Powell court emphasized that the plaintiff had a right to rely on the description in the act of sale in which the State acquired the appropriated property. The language used by the court indicated that, in effect, the State was estopped from asserting the defense of prescription due to its previous purchase since the plaintiff had no warning or notice that his land had been appropriated. See also Guion v. State Dept. of Transportation and Development, 391 So.2d 1367 (La.App. 4th Cir.1980), writ denied 397 So.2d 1361 (La.1980).
In this case, the facts are clear that the Parish of Jefferson and City of Kenner built, respectively, the drainage canal in 1966 and pumping station in April, 1975 on the property they believed to be within the right-of-way for Minden Avenue. However, neither defendant checked the records to determine its status on those dates. As a result, they were unaware that the street dedication had been revoked in 1941 and that Minden Avenue was closed by the City of Kenner at that time, causing the portion of the right-of-way west of its centerline to accrue to or revert back to the adjoining landowner, plaintiffs' ancestors-in-title. The eastern boundary of petitioners' land was thus established by defendant, City of Kenner.
Because of these facts, we find that this case, like Powell, is not one which falls within the expropriation statutes but is governed, as the trial judge found, by the three-year prescription of LSA-R.S. 13:5111.
Defendant next asserts that even if LSA-R.S. 13:5111 applies the plaintiffs had constructive notice of the encroachment.
The Louisiana Supreme Court defined constructive knowledge as follows in Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (La.1970):
"Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription." At page 287.
The testimony of Gregory Jungeblut was that he and his mother and grandmother, the plaintiffs, occasionally drove out to the property over the years. The property fronts on Airline Highway west of the airport adjacent to the eastbound lane of the highway. When the parties decided to investigate development of the land, Mr. Jungeblut took a 1930 survey to the property but had difficulty locating the posts. This occurred sometime prior to December, 1977. Thereafter, the plaintiffs hired a surveyor to resurvey the land. The survey showing the ditch as an encroachment was received in April, 1978. The photographic exhibits and testimony shows that the property is undeveloped, wooded and overgrown. Although the property fronts on Airline Highway and a motel is located on the eastern boundary along the former *979 right-of-way, the center of the former right-of-way is also overgrown.
Because of these facts, we hold that plaintiffs had neither constructive nor actual knowledge of the encroachment. As a result, the commencement of the running of prescription under LSA-R.S. 13:5111 did not begin until the plaintiffs discovered the encroachments in 1978. Since the suit was filed in 1980, we find that the action was timely filed.
The third error specified by the Parish of Jefferson concerns the $17,000.00 in attorney's fees awarded by the trial court. Under LSA-R.S. 13:5111, plaintiff is entitled to reasonable attorney fees to be awarded as part of the court costs.
In determining reasonable attorney's fees, it has generally been held that the factors to be considered are the amount involved, the skill of the attorney and the amount of work necessarily undertaken. Roberie v. Ashy Construction Company, 215 So.2d 857 (La.App. 3rd Cir.1968), writ denied 253 La. 323, 217 So.2d 414; Reynolds, Nelson, Theriot and Stahl v. Chatelain, 428 So.2d 829 (La.App. 5th Cir.1983), writ denied 434 So.2d 1098 (La.1983).
In State v. Ransome, 392 So.2d 490 (La. App. 1st Cir.1980), an expropriation case, the court stated:
"In considering reasonable attorney fees, the court must first consider these factors in awarding attorney fees, namely: (1) the ultimate result obtained; (2) responsibility incurred; (3) the importance of the litigation; (4) the amount involved; (5) the extent and character of the labor performed; (6) the legal knowledge, entertainment, and skill of the attorney; (7) the number of appearances made; (8) the intricacies of the facts and law involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge." At page 495.
The analysis in Ransome was followed in another expropriation case, Faustina Pipe Line Co. v. Broussard, 450 So.2d 17 (La. App. 3rd Cir.1984), writ denied 452 So.2d 172 (La.1984).
In this case, the Parish of Jefferson argues that $17,000.00 in attorney's fees is excessive particularly in view of the fact that the award of damages was much less. In its reasons for judgment, the trial court noted that the award of $17,000.00 for attorney's fees was supported by the record.
The attorney and client herein testified to an agreement of $75.00 per hour except for trial work which would be billed at $100.00 per hour. In detailed examination, the attorney explained the billing procedure and produced documents to support the charges. Numerous pleadings, memoranda and documents were filed in the case, and the case issues were of moderate complexity. However, the work product was of a superior quality and counsel for plaintiffs made more than 15 court appearances in this matter. Further, we recognize that the trial court is in a particularly good position to evaluate the amount, quality, and value of the attorney's work product to the litigants. Thus, after considering all the factors, we find that the award for attorney's fees is fair and reasonable.
Plaintiffs-Appellants
The plaintiffs argue in their first two specifications of error that the trial court committed error in assessing only 50% damage to the value of the land for the strip of land east of the ditch and 90% damage to the land for the canal or ditch.
The evidence shows that the ditch is 12 feet wide and that the length of both the ditch and the eastern strip is 635 feet. The eastern strip is approximately 10½ feet from the ditch to the property line.
With regard to the percentage of each of those items of damage, plaintiffs' expert appraiser, Robert Corder, testified that the canal as well as the 10½ foot wide area on the eastern boundary are totally unusable. The ditch is unusable for obvious reasons and the 10½ foot strip is valueless to the plaintiffs because the ditch requires a certain amount of property on either side for stability and because the ditch isolates the 10½ foot eastern portion.
*980 Defendants' witness, Angus Eason, was commissioned to appraise the ditch. He stated the ditch had value but only for drainage and that the eastern strip has value, but only to the adjacent property owner. Eason testified the owners had suffered a loss of value of 90% to the ditch property and had been damaged 50% to the value of the eastern strip.
The trial court, in reasons for judgment, stated that the portion of the property occupied by the canal was virtually useless. Basing the value of the land at $.82 per square foot, the district judge then assigned a loss of $.72 per square foot or 90 percent, finding that it has a value of $.10 per square foot to the owners, apparently for drainage. We do not find that this assessment of percentage of loss for the ditch to be manifestly erroneous but do disagree with the valuation placed by the lower court as set forth hereinafter.
The trial judge determined that the eastern strip of 10½ feet was damaged 50% by the appropriation. We disagree with this finding. The court relied upon the testimony of Angus Eason, defendant's witness, and Mr. Eason unequivocally stated that strip had value only to the adjacent property owners but had no value to the plaintiffs. Thus, it is apparent that the damage to the plaintiffs regarding the 10½ foot strip was 100% and we increase the award to so reflect.
Finally, plaintiffs argue that the court erred in assessing damages based on the value of the property on the date the ditch was constructed in 1966. It is asserted that the proper evaluation date is either the date of trial or date of discovery of the taking.
In lawful expropriation cases the general severance damages are calculated by determining the difference between the market value of the remaining portion of property immediately prior to expropriation and immediately after the taking. Severance damages are those done to the remaining property because of its severance from the expropriated portion. State of Louisiana through Department of Highways v. Ponder, 345 So.2d 106 (La.App. 1st Cir.1977), writ refused 346 So.2d 711 (La. 1977). However, this matter is not an expropriation proceeding. In cases where there is no showing that there was a lawful taking of property the courts have held that the market value is calculated from the date the property owner discovers the taking. Cruell v. Jefferson Parish, 216 So.2d 604 (La.App. 4th Cir.1968), writ refused 253 La. 640, 219 So.2d 175 (1969); Reddel v. State of Louisiana through Department of Highways, 340 So.2d 1010 (La.App. 4th Cir.1976); Chenevert v. Louisiana State Department of Highways, 345 So.2d 960 (La.App. 4th Cir.1977), writ denied 349 So.2d 325 (La.1977).
Our review of the record indicates that the lower court incorrectly utilized the market value from the date of the taking in 1966. However, the plaintiffs' expert did not testify as to the market value of the property on or about the date of discovery in 1978. The only testimony in this regard was by the defendants' expert, Mr. Eason. He stated his comparables produced a figure of $1.45 a square foot as of May 1978. Consequently, we find plaintiffs are entitled to an increase calculated on $1.45 a square foot.[2]
For the foregoing reasons, after a review of the law and evidence, the judgment is hereby amended to increase the damages for the canal to nine thousand nine hundred eighty-two dollars ($9,982.00); and increase the damages for the eastern strip to nine thousand six hundred sixty-seven dollars and ninety-nine Cents ($9,667.99) in favor of plaintiffs and against defendant, Parish of Jefferson. The judgment is affirmed in all other respects.
The costs of appeal are to be assessed against defendant-appellant, Parish of Jefferson. AFFIRMED AS AMENDED.
NOTES
[1] The judgment failed to include a determination for or against the City of Kenner and an amended judgment was apparently rendered which included a determination against the City of Kenner which cannot be found in the record of the trial court. However, since the City of Kenner did not appeal, that judgment is of no concern to this court.
[2] The canal: (90% damaged) 1.31 sq. ft. × 12 ft. × 635 ft. = $9,982.20

The eastern strip: (100% damaged) 1.45 per sq. ft. × 10.5 ft. × 635 ft. = $9,667.88