682 So.2d 1257 (1996)
Samuel L. LIEBER, Plaintiff-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Defendant-Appellee.
No. 28745-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
Rehearing Denied December 5, 1996.
Weiner, Weiss, Madison & Howell by Neil T. Erwin, Shreveport, for Plaintiff-Appellant.
Ronald J. Bertrand, for Defendant-Appellee.
Before MARVIN, C.J., and HIGHTOWER and PRICE, JJ.
MARVIN, Chief Judge.
In this action for damages and attorney fees founded on the wrongful taking of about two acres of Lieber property in the 1950s for the construction of the extension of La. Highway 1 in Shreveport (Youree Drive north of its intersection with Kings Highway) by the State Department of Highways (now DOTD), Dr. Lieber, successor in title to his father who owned the property when the taking occurred, appeals a judgment sustaining the State's plea of prescription and rejecting Dr. Lieber's demands. La. Const. art. 1, § 4; La. R.S. 13:5111.
We amend and affirm.

*1258 FACTS
Dr. Lieber's father, Philip Lieber, owned the property in question in 1953 on which existed a portion of a levee about 86 feet in width that had been formally abandoned by the Caddo Levee District years after it was constructed. That levee was a part of a system that protected the area against flooding by the Red River. Some portions of the original system had to be redesigned because of changes in the river, resulting in the abandonment of portions of the levee. See Lieber v. Hamel, 446 So.2d 1240 (La.App. 2d Cir. 1983), writ denied.
According to a 1952 internal Department of Highways document discussing the existence of the levee and the proposed highway extension:
This area was apparently never dedicated for public use and when the levee is removed the title will apparently revert to Philip Lieber. It would seem that the area as it now exists is useless to the owner and we have used the Right of Way Deed for this transaction because there is a question as to the title to the property and a Right of Way Deed does not warrant the title. Under a Right of Way Deed the owner will also retain whatever mineral rights he may have. If possible we would prefer to secure this parcel of right of way by donation on account of the question as to the title. (Our emphasis.)
In 1953 Philip Lieber executed a right of way deed to the State for $2,500 describing the two acres in question. The State removed the levee and thereafter completed the extension of the highway in December 1954.
Soon after the project was completed, Philip Lieber realized that some of the property included in the right of way deed had not been used in the project. On July 14, 1955, Lieber's lawyer wrote the State requesting that the right of way be "confined to that part of the property actually occupied by the completed highway so that [Lieber] might make other uses of the remainder of the property." The Department quickly denied this request, according to a letter written by Lieber's lawyer to his client on July 20, 1955, quoting for Lieber the Department's response:
The Department feels that it is to the Department's advantage to retain all of the right-of-way obtained from Mr. Lieber and therefore cannot favorably consider Mr. Lieber's request.
For about a year thereafter, Philip Lieber personally corresponded with the director of the Highway Department and with other state officials, explaining his desire to donate a portion of the unused acreage to a local church and to build a medical clinic for his son and other young doctors on the rest of the land, situated at what was becoming a major traffic intersection with heavy commercial development. Lieber also complained that the Shreveport Railways Company (municipal trolley system) was being allowed to use the vacant land to provide its customers with free parking, without Lieber's consent.
By letter of April 17, 1956, the director of the Highway Department informed Lieber that
this property was purchased for adequate "sight distance" [at the busy intersection] and I understand that permission was granted the Shreveport Railways Company by Mr. Lane Mitchell for its use as a parking lot. Such a use, however, is contrary to Highway [Department] policy and I am today writing the Shreveport Railways Company that they can no longer occupy this site as it is our plan to beautify this section ... in accordance with [federal] requirements. (Our brackets.)
Lieber took no further action thereafter, in or out of court, according to this record.
About ten years later, on April 6, 1966, Lieber sold to his son, Dr. Samuel Lieber, his interest in several tracts of Shreveport land, including the land at Youree Drive and Kings Highway, over which Lieber had granted the right of way to the State in 1953. The land was sold "without warranty but with substitution and subrogation to all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which [Philip Lieber] may be entitled[.]"
*1259 When Dr. Lieber acquired the property, both he and his father regarded the 1953 right of way deed as a valid and binding document. Their only complaint at that time concerned the fact that the State did not use all of the land described in the deed for the extended roadway, the public purpose for which the right of way was granted. In correspondence with the State from 1966-1969, both with and without counsel, Dr. Lieber questioned the State's assertions that the excess property was needed for a public purpose, and complained of one or more Shreveport civic clubs being allowed to use the property to sell Christmas trees. This correspondence ended cordially, but unfavorably to Dr. Lieber, in December 1969.
Dr. Lieber made no further formal complaints or demands about the Youree Drive property from 1969 until 1982, when he filed this action for declaratory judgment to determine the ownership of several tracts of "levee land" in Shreveport, including this land and another levee tract on 70th Street that became the subject of other litigation with the Hamel family. See Lieber v. Hamel, cited supra. It is unclear who the original defendants were in the 1982 petition, which Dr. Lieber filed in proper person, though they apparently included the Hamels and the Caddo Levee District Board of Commissioners.
By amended petition filed in July 1985, Dr. Lieber alleged for the first time that the 1953 right of way agreement between his father and the State for the extension of Youree Drive was invalid because the "State Highway Department erred in buying a servitude and not fee simple[.]" Dr. Lieber alleged that the State's right of way agreement with his father was an absolute nullity under former La. R.S. 48:312, which required the State to take fee title, and not merely a servitude or right of way, when acquiring property rights for a limited-access highway. The statute was in effect in 1953, but was repealed in 1955.
Still representing himself in 1985, Dr. Lieber requested a declaratory judgment recognizing that the "State Department of Highways... [has] no bona fide right of way" over the property, and that the State's exercise of the "illegal servitude" violated Dr. Lieber's due process and equal protection rights.
Dr. Lieber thereafter retained counsel, who filed additional amended petitions from 1988-1991, alleging with more particularity the "inverse condemnation" claim asserted by Dr. Lieber in his pro se pleadings, based on the invalidity of the 1953 right of way deed.
For the first time in the 1988 amended petition, Dr. Lieber alleged that only a portion of the two-acre tract described in the right of way deed was used in the highway project. He claimed that the State had denied the Liebers the right to use the remaining acreage while allowing third parties to make commercial use of it, thereby violating the Liebers' constitutional rights to compensation for the taking of their property and to due process and equal protection of law. In addition to his claims for damages and attorney fees for both the "illegal" taking of a servitude instead of fee title at the outset, and for the "excess" taking of more land than was actually used in the highway project, Dr. Lieber sought to have full ownership of the excess land restored to him.
In December 1989, the State quitclaimed its interest in about two thirds of the part of the tract that was not used by the State for the highway extension. After unsuccessfully arguing that the quitclaim deed was intended to serve as a compromise of all of Dr. Lieber's claims, the State later admitted that it had no written compromise agreement with Dr. Lieber. The State further admitted in the pre-trial order that it "asserts no facts as its basis for claiming the continued utility of a servitude over the unpaved portion of the subject Lieber property at Youree Drive and Kings Highway not covered by the ... Quitclaim Deed ... other than the potential use of the servitude area by the City of Shreveport in proposed improvements to Kings Highway." Our emphasis. Dr. Lieber thereafter reiterated his claim that the State "should return the entire [unused portion of the] property." Our brackets.
*1260 While the validity of the 1953 right of way agreement was being litigated, the State filed exceptions of no right of action and prescription to Dr. Lieber's damage claims. The exceptions to, and the merits of, those claims were tried in September 1995, after this court affirmed the partial summary judgment declaring the 1953 right of way agreement null in Lieber v. Caddo Levee District Board of Commissioners, 27,267 (La.App.2d Cir. 8/23/95), 660 So.2d 188, writ denied.
The State's plea of prescription is not directed to Dr. Lieber's demand that the State relinquish any interest it may have in the portion of the "excess" land which was not included in the quitclaim deed. The State has candidly admitted having no factual basis for claiming that this land is needed for a public purpose. Under these circumstances, we shall amend the judgment to declare that the State has no possessory interest in the portion of the two acres not used by the State in the construction and maintenance of the highway. Our references hereafter to the "claim for excess taking," and to the prescriptive period applicable to that claim, shall be limited to the claim for damages and attorney fees for the excess taking.

PRESCRIPTION OF DAMAGE CLAIMS
At the hearing on the exceptions, Dr. Lieber admitted that both he and his father knew soon after the project was completed in 1954 that some of the land described in the 1953 right of way deed, which the Liebers then regarded as valid, had not been used in the project. Dr. Lieber testified that he knew the State had refused his father's requests to relinquish its interest in the excess land, not only when he bought the property from his father in 1966, but "from 1955 on." Our emphasis. His explanation for having waited until 1982 to file this action, in which the excess taking claim was first raised by the amended petition filed in 1988, was that he was "too busy" with litigation over other Shreveport properties in the interim. See, for example, Lieber v. Hamel, cited supra; Lieber v. Rust, 388 So.2d 836 (La.App. 2d Cir.1980), affirmed, 398 So.2d 519 (La.1981) and Lieber v. Ownership of Real Property Located in Caddo Parish, 501 So.2d 957 (La. App. 2d Cir.1987), writ denied.
In contrast to his admission that he had known of the excess taking since 1955, Dr. Lieber testified that he first discovered the illegality of the 1953 right of way agreement under former R.S. 48:312, which was repealed in 1955, at some unspecified time between the filing of his original and first amended petitions in this action in 1982 and 1985, respectively. During that time, and without the assistance of a lawyer, Dr. Lieber researched the public records in Caddo Parish and
realized that there were suits related to the [Youree Drive extension project]. And when I read those suits it opened my eyes that the Highway Department argued that they simply had to buy fee title [from other landowners] because the laws stated so, and I thought that it was illegal for them to buy a servitude [from my father] because of that. (Our emphasis and brackets.)
Dr. Lieber thereafter alleged the illegality of the 1953 right of way deed in his amended petition filed in July 1985. The State did not raise the exception of prescription as a bar to litigating the validity of the deed, apparently because the deed was alleged, and later found, to be an absolute nullity not subject to liberative prescription. See La. C.C. arts. 2030-2032 and Lieber v. Caddo Levee District, supra, 27,267 at p. 10; 660 So.2d at 193. See also Byrd v. Byrd, 230 La. 260, 88 So.2d 214 (1956).
The State's plea of prescription to the claims for damages and attorney fees is founded on La. R.S. 19:14, 19:2.1 and 13:5111. These statutes respectively
recognize that the state may acquire private property for a public purpose without formal expropriation proceedings, and without prior payment of constitutional compensation, by constructing public facilities on the property in good faith and with the consent or acquiescence of the owner (R.S. 19:14, enacted in 1976 to codify the jurisprudential doctrine of St. Julien v. Morgan L. & T. Railroad Co., 35 La. Ann. 924 (1883));

*1261 require the owner in such circumstances to bring his claims for compensation and for damages caused by the taking within two years from "the date on which the property was actually occupied and used" for a public purpose (R.S. 19:14, incorporating by reference the provisions of R.S. 19:2.1, which apply to takings by formal expropriation proceedings);
or alternatively, require that actions for compensation, including reasonable attorney fees, "for the taking of property by the [state], other than through an expropriation proceeding," be brought within three years from "the date of such taking." (R.S. 13:5111, the substance of which was enacted as R.S. 13:5061 in 1972).
Notwithstanding the literal wording of the statute, the three-year prescriptive period of § 5111 is deemed to begin only when the owner discovers the fact that his property has been taken. Powell v. Department of Highways, 383 So.2d 425 (La.App. 4th Cir. 1980), writ denied; Jungeblut v. Parish of Jefferson, 485 So.2d 974 (La.App. 5th Cir. 1986).
The State also filed an exception of no right of action, asserting that the right to claim compensation and damages for the taking of property is personal to the property owner at the time of the taking unless the right is expressly transferred to a subsequent owner. See generally McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42 (1907); Brooks v. New Orleans Public Service, Inc., 370 So.2d 686 (La.App. 4th Cir. 1979), writ denied.

TRIAL COURT RULING
The trial court sustained the prescription exception without reaching the exception of no right of action. Because the record supports the court's ruling that the damage claims have prescribed, we shall assume solely for discussion purposes, without deciding that Dr. Lieber has a right of action to bring those claims.
The trial court applied the three-year prescriptive period of R.S. 13:5111, rather than the two-year period of R.S. 19:14, giving Dr. Lieber the benefit of the longer period. Notwithstanding the invalidity of the 1953 right of way deed, the trial court essentially found that the Liebers knew the State had taken the land that was actually used for the extension of Youree Drive when the extension project was completed in 1954. With respect to the land that was not used in the project, the court found that prescription began in 1955, when the Liebers learned of the State's refusal to relinquish the excess land.
Dr. Lieber argued in the trial court that prescription on his claims was interrupted under the doctrine of contra non valentem. He maintained that prescription on his inverse condemnation claim arising from the defective right of way agreement did not begin to run until he discovered in the early 1980s, the law which rendered the agreement null. Emphasizing that his father did not know of this law when he granted the right of way to the State, Dr. Lieber claimed that the State knew or should have known of this law when its agents or employees "refused [to buy from] my father fee title, [and instead] bought a servitude." Our brackets.
Dr. Lieber made a similar argument on the excess taking claim, contending prescription was interrupted by the State's repeated representations, over a period of decades, that all of the land was needed for a public purpose.
The trial court deemed contra non inapplicable, saying neither the Liebers' "lack of knowledge of the law" nor the State's representations regarding the reasons for the excess taking served to interrupt prescription. These rulings form the crux of Dr. Lieber's appeal.

DISCUSSION
Inverse Condemnation Claim
Before addressing Dr. Lieber's contra non valentem arguments, we briefly note that the record does not support his assertion that the State affirmatively "refused to buy fee title" from Philip Lieber in 1953. There is no evidence in this record to show or suggest that Lieber desired or offered to sell the property outright, notwithstanding that he was then the president of a local savings and loan association with many years of experience *1262 in real estate dealings, both professionally and personally.
The internal Department of Highways correspondence in 1952 mentioned above suggests two benefits to Lieber in conveying only a servitude rather than full ownership to the State: He would not be expected to warrant title to the levee burdened land, which he apparently acquired through liquidation proceedings involving a failed real estate development company, and he would retain the mineral rights. Ordinarily, the landowner prefers to grant lesser rather than greater property rights to the expropriating authority. See, for example, State Dept. of Highways v. Olinkraft, Inc., 350 So.2d 865 (La.1977) (on rehearing) and Red River Waterway Commission v. Fredericks, 566 So.2d 79 (La.1990).
Notwithstanding that the State's acquisition of a servitude from Lieber for this limited-highway access project clearly violated former R.S. 48:312, which was in effect for only a relatively short time, 1944-1955, we simply cannot ascribe any ill motives to the State in this particular case. According to this record, and even without the invalid right of way deed, it is apparent that the State's initial "appropriation" or "inverse condemnation" of Lieber's property for the extension of Youree Drive was done in good faith and for a public purpose. Lieber's sole objection to the project, regarding the quantity of the land taken, arose only after the project was completed.
Under the law in effect at the time of the taking, the State may be said to have acquired a valid interest in the Lieber property under the St. Julien doctrine, at least as to that part of the property actually used for the extension of Youree Drive. See generally State Dept. of Highways v. Champagne, 371 So.2d 626, 631 (La.App. 1st Cir.1979), reversed in part on other grounds, 379 So.2d 1069 (La.1980). This is true even if Philip Lieber's acquiescence in the initial taking resulted from his erroneous belief that the 1953 right of way agreement he signed was legally valid. See and compare Veillon v. Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3d Cir.1966), writ denied.
At least as to the property actually used for a public purpose, which the State could have validly taken even without a right of way deed, Lieber was relegated to a claim for compensation, which was then regarded as a personal action subject to a ten-year prescriptive period under former La. C.C. art. 3544 (now Art. 3499). See and compare McCutchen v. Texas & P. Ry. Co., cited supra, and Maxfield v. Gulf States Utilities Co., 65 So.2d 615 (La.App. 1st Cir.1953). Lieber did not bring a claim for compensation, nor an action to challenge the extent of the taking, even after the State refused to relinquish its rights to the excess land in 1955.
Contra Non Valentem: Ignorance of Law v. Ignorance of Facts
Dr. Lieber argues that prescription on the inverse condemnation was interrupted until the early 1980s, when he discovered a legal basis for arguing that the right of way deed signed by his father in 1953 was invalid. He makes a similar argument on the excess taking claim, essentially contending that both he and his father were "lulled" into refraining from legal action regarding the land that was not used in the 1954 state project by the State's repeated [mis-]representations that the excess property was needed for a public purpose, such as to provide adequate sight distance at the intersection or to incorporate a nearby city street into the highway plan as a service road.
These arguments miss the important distinction between ignorance of the facts giving rise to a legal claim, and ignorance of one's legal rights under the known facts. While factual ignorance may prevent the running of prescription in some circumstances, ignorance of the law does not. See Hawthorne v. La. Dept. of Public Works, 540 So.2d 1261 (La.App. 3d Cir.1989), writ denied; Knighten v. Knighten, 447 So.2d 534 (La.App. 2d Cir.1984), writ denied; and Hampton v. Kroger Co., 27,073 (La.App.2d Cir. 6/21/95), 658 So.2d 209, writ denied.
The situation here is analogous to Hawthorne. There, the court stated:
[P]laintiffs ... were aware of the permanent flooding of their respective properties since the spring and summer of 1972, when *1263 the water first failed to subside and drain away as it had done prior to the construction of the Jonesville Lock and Dam. It was only their rights under these known facts that plaintiffs were allegedly unaware of until such time as the Boothe case was decided [by the third circuit in 1979,] ... having relied ... until such time... upon prior communications from the Corps of Engineers which supposedly indicated that no compensation was due to landowners ... whose property was inundated as a result of the construction of the Jonesville Lock and Dam....
... [P]rescription on plaintiffs' claims [under R.S. 13:5111] began to run, at the latest, at the end of the summer of 1972, at which time ... plaintiffs were fully aware of the permanent inundation of their properties.... Hawthorne filed his suit [in] 1981, and the Coopers' suit was filed [in 1980]. Nothing prevented plaintiffs from instituting suit on an earlier date, as was done by the plaintiffs in Boothe. They chose not to do so and their misunderstanding, if any there be, as to their legal rights did not toll the running of the prescriptive period under R.S. 13:5111.

540 So.2d at 1263-64. Emphasis and brackets supplied; footnotes omitted.
In a different context, this court has held that one with factual knowledge that he has been extorted cannot invoke contra non valentem to delay the running of prescription while he gathers evidence to corroborate his account of the facts. Gulf States Land & Development, Inc. v. Ouachita National Bank, 612 So.2d 1031 (La.App. 2d Cir.1993), writ denied.
Synthesizing the reasoning in Hawthorne and in Gulf States, we decline to adopt Dr. Lieber's suggestion that he and his father should be excused from having failed to take legal action on the excess taking claim for a period of years or even decades after they became aware of the factual basis for the claim, simply because they relied on their adversary's representations as to the merits of the claim.
Similarly, the Liebers knew from the outset that the 1953 right of way deed did not purport to convey full ownership of the Lieber property to the State. The fact that the State purchased or expropriated other property for the same project in full ownership was a matter of public record, as was the statute which rendered the 1953 agreement invalid. The delay in discovery by the Liebers of the legal implications of the known and knowable facts did not prevent the running of prescription on the inverse condemnation claim.

Continuing Tort Theory
Dr. Lieber argues that the State's taking of more land than was needed for the Youree Drive extension project, and allowing third parties to use the excess land to the exclusion of the Liebers, constitutes a continuing tort, as to which prescription does not begin until the tortious conduct ceases. This theory has been unsuccessfully raised in other cases involving the taking or damaging of property for a public purpose without formal expropriation proceedings. See Lyman v. Town of Sunset, 500 So.2d 390 (La.1987) and Hawthorne, supra. As did the court in each of those cases, we decline to apply the general tort rules concerning the commencement and length of the prescriptive period to a claim against a public body which is governed by a more specific statutory provision (two years from the time damages are sustained, when private property is damaged for a public purpose, in Lyman, applying R.S. 9:5624 before its 1987 amendment; and three years from the date of discovery of a taking "other than through an expropriation proceeding" in Hawthorne, applying R.S. 13:5111).
Denial of Due Process and Equal Protection
Dr. Lieber's claims for damages for the denial of his constitutional due process and equal protection rights arise from the same facts forming the basis of his claim that the property was taken or damaged by the State without the payment of just compensation. On this record, the resolution of the latter more specific constitutional claim also resolves the former, more general constitutional claims.

*1264 CONCLUSION
The claims for which Dr. Lieber seeks damages and attorney fees under La. Const. art. 1, § 4 and R.S. 13:5111the "inverse condemnation" of the entire two acre tract and the "excess taking" of more land than was apparently used for the state project both arise from "the taking of property by the [state], other than through an expropriation proceeding," in the words of § 5111. These claims were brought more than three years after discovery of the facts involved in the respective takings. On this record, and notwithstanding the invalidity of the 1953 right of way deed, we find no basis to disturb the trial court's ruling that the damage claims asserted by Dr. Lieber, even if he has a right of action to bring them, have prescribed. Compare Powell v. Department of Highways and Jungeblut v. Parish of Jefferson, both cited supra. See also and compare the pre-§ 5111 case of Chenevert v. La. State Dept. of Highways, 345 So.2d 960 (La.App. 4th Cir.1977), writ denied.

DECREE
We amend the judgment to declare that the State has no possessory interest in the portion of the two acres not used by the State in the construction and maintenance of La. Highway 1, as that two acres was described in the 1953 right of way deed from Philip Lieber to the State Department of Highways. In all other respects, and as amended, the judgment is affirmed. Costs of the appeal are assessed to Dr. Lieber.
AMENDED AND, AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before MARVIN, HIGHTOWER, BROWN and GASKINS, JJ., and PRICE, J. Pro Tem.
Rehearing denied.